## MABEL FIRST LUTHERAN CHURCH v. JONAH CADWALLADER AND OTHERS.[1]

October 28, 1927.

No. 26,224.

**Title to property of former societies vested in consolidated corporation.**

1. An unincorporated church society erected and for 14 years maintained a church upon land deeded to its three officers as trustees of the society. It then united with an incorporated church society, and the consolidated societies in form incorporated as a consolidated corporation. The consolidated corporation, with the consent of all parties in interest, took over the property of both constituent societies and managed and administered it for church purposes thereafter as owner thereof. *Held* that the consolidated corporation is at least a corporation de facto, and that title to the property of the former societies vested therein.

**When a de facto corporation can be created.**

2. To create a de facto corporation there must be a law under which such a corporation may lawfully be created, a colorable and bona fide attempt to organize a corporation thereunder, and the exercise of corporate functions by the organization so formed.

**Unincorporated society cannot acquire title by adverse possession.**

3. The unincorporated society, having made no attempt to incorporate prior to the consolidation, was not a de facto corporation and could not acquire title by adverse possession.

[1]Reported in 215 N. W. 845.

Consolidated organization could acquire property as if it were legally incorporated.

    4.  The consolidated organization, being a corporation de facto, could acquire, take and hold property the same as if legally incorporated.

Section 7998 vested in consolidated corporation property of its constituent organizations.

    5.  The statute, G. S. 1923, § 7998, vested in the consolidated corporation the property of the organizations forming it.

Under § 7971 conveyance to officers of unincorporated society creates valid trust for its use.

    6.  Under the statute now found in G. S. 1923, § 7971, the conveyance to the officers of the unincorporated society as trustees created a valid trust for the use of that society.

Under § 7986 upon consolidation title of trustees vested in consolidated corporation.

    7.  Under the statute now found in G. S. 1923, § 7986, the title held by the trustees vested in the consolidated corporation when the unincorporated society consolidated with the other therein.

Estoppel against trustees asserting their title.

    8.  The trustees are estopped by their conduct from asserting title as against the consolidated corporation.

Corporations, 14 C. J. p. 200 n. 77; p. 204 n. 21; p. 208 n. 29; p. 214 n. 92; p. 217 n. 10; p. 239 n. 19; 14a C. J. p. 1066 n. 35; p. 1071 n. 15. Religious Societies, 34 Cyc. p. 1121 n. 29, 32; p. 1150 n 49; p. 1191 n. 88.

See 7 R. C. L. pp. 61, 62, 67, 157.

Action in the district court for Fillmore county to determine adverse claims to church property. There were findings for the plaintiff, and defendants E. C. Erickson and Knute Olson appealed from an order, Peterson, J., denying their motion for a new trial. Affirmed.

*Gray & Gray, F. G. Sasse,* and *R. A. Dunnette,* for appellants.
*Hopp & Larson,* for respondent.

TAYLOR, C.

An outline of the facts may aid in understanding the questions presented.

On November 25, 1904, a meeting was held in the village of Mabel in the county of Fillmore to consider the matter of organizing a congregation and providing for religious services for the people in that vicinity who belonged to the Norwegian Synod. Those present, 16 in number, favored the project, but adjourned the meeting to December 9, 1904, without taking any formal action.

At the adjourned meeting they proceeded to organize a congregation, and adopted "articles of constitution, such as are usually used in the Norwegian Synod," except that the selection of a name for the congregation was deferred to be taken up at a later meeting. They elected Reverend K. Seehus as chairman, E. C. Erickson as secretary, and Knute Olson as treasurer. They appointed Levi Fossum and Tollef C. Lee a committee to investigate and report at a later meeting as to a desirable site for the church, and appointed the Reverend Seehus to receive subscriptions for it. The record of this meeting also contains the following paragraph: "Rev. K. Seehus, E. C. Erickson and Knute Olson were requested to have the articles of incorporation prepared and recorded."

At a meeting held on March 24, 1905, the name, "The First Nor[wegian] Ev[angelical] Lutheran Church of Mabel, Minn." was adopted as the name of the congregation. At this meeting the committee to look up a site for the church reported that they had found three suitable lots in the village which could be bought for $600 and were authorized to buy them, and the treasurer was directed to collect money on subscription to pay for them when the deed was delivered.

Thereafter Seehus, Erickson and Olson, apparently without any express authority from the congregation, bought the lots and received a warranty deed, dated April 17, 1905, conveying the lots to "Reverend K. Seehus, E. C. Erickson and K. Olson as trustees for the First Evangelical Church of Mabel." The purchase price was paid by Olson and Erickson out of their own funds. The congre-

gation erected a brick church on the lots, which was dedicated in May, 1906, and was used by the congregation as their place of worship until the consolidation hereinafter mentioned. No trustees were elected before 1907. They were elected regularly after 1907.

Another church had been organized in the village of Mabel under the name "Norwegian Evangelical Lutheran Congregation, Mabel, Minnesota," and incorporated under that name prior to any of the transactions mentioned herein. This congregation owned and occupied a frame church. To avoid confusion, the term "frame church" was used at the trial to designate this congregation and the term "brick church" to designate the other congregation, and for the same reason we shall use those terms in the same sense.

Probably as early as 1918 the two congregations began negotiations looking to a consolidation of the two organizations. As a result the frame church adopted a resolution to consolidate with the brick church, and thereafter and in January, 1920, the brick church unanimously adopted a resolution to consolidate with the frame church. On February 5, 1920, a joint meeting of the two congregations was held to perfect the consolidation. The name, "Mabel First Lutheran Church" was adopted as the name of the consolidated organization, officers and trustees were elected, and thereafter articles of incorporation were executed and on February 17, 1920, were recorded in the office of the register of deeds. From that time on the consolidated organization took the place of both prior organizations in all respects and, as the successor of such prior organizations, took possession of all their property, including the church buildings, and managed, used and dealt with it as the owner thereof. The articles of incorporation of the new organization expressed a desire that both church buildings should continue to be used as places of worship and should be kept in good repair, but provided that if it should prove impracticable to use them for that purpose or for auxiliary work connected with the church, they might be disposed of, but that "no sale or transfer shall be made whereby the buildings shall be used in any activity not sanctioned by, and not in keeping with the high and sacred purpose of the church."

Probably in 1925 or early in 1926, the date is not given, the consolidated organization caused the frame church building to be removed and began the erection of a new church building on that site, and early in 1926 took action looking to the rental of the brick church building for use by the American Legion, the village council, and for other purposes when the new church should be completed. Some of those who had been members of the former brick church congregation evidently became dissatisfied and questioned the title of the consolidated organization to the lots occupied by the brick church. Thereupon the consolidated organization as plaintiff brought this action to determine adverse claims to those lots and to other property. E. C. Erickson and Knute Olson were the only defendants who appeared in the action. They interposed an answer in which they asserted that they and the Reverend K. Seehus were the owners in fee of these lots under the deed executed to them in 1905. The trial court made findings of fact to the effect that the brick church organization was a de facto corporation, and that that organization and plaintiff as its successor in interest had acquired title to the lots by adverse possession, and directed that judgment be entered decreeing plaintiff to be the owner in fee of the lots and barring the defendants from any right, title, estate or interest therein. The answering defendants appealed from an order denying a new trial, and will be intended by the term defendants when used hereafter.

[1] Defendants challenge the finding that the brick church organization was a de facto corporation as not sustained by the evidence.

The statement in the minutes of the meeting of December 9, 1904, previously quoted, that "Rev. K. Seehus, E. C. Erickson and Knute Olson were requested to have the articles of incorporation prepared and recorded," is the only reference to the matter of incorporating that organization found in the record. The persons named never took any action whatever in respect to the matter; and no certificate of incorporation of any sort was ever prepared, signed or filed for record by anyone. So far as appears the matter of incorporating was never referred to after the meeting of December 9, 1904.

[2] It is settled law that in order to create a de facto corporation three things are essential: (1) The existence of some law under which such a corporation may lawfully be created; (2) a colorable and bona fide attempt to organize a corporation under the law; and (3) the exercise of corporate powers and functions by the organization so formed. Finnegan v. Noerenberg, 52 Minn. 239, 53 N. W. 1150, 18 L. R. A. 778, 38 A. S. R. 552; Baltimore & P. R. Co. v. Fifth Baptist Church, 137 U. S. 568, 11 S. Ct. 184, 34 L. ed. 784; Evens v. Anderson, 132 Minn. 59, 155 N. W. 1040; 7 R. C. L. 60, § 42 et seq.; 14 C. J. 213, § 223 et seq. Here there was no attempt to comply with the requirements of the law under which such a corporation could have been created. See G. S. 1923, §§ 7963, 7972, 7985. [3] Where there has been no attempt to create a corporation de jure there can be no corporation de facto. We must also sustain the contention of defendants, that as the brick church organization was not a corporation either de jure or de facto it could not take title to real estate nor acquire title thereto by adverse possession. 14 C. J. 200, § 207.

[4] The brick church congregation was an unincorporated church society prior to the consolidation. The two congregations united and attempted to form a consolidated corporation under G. S. 1923, §§ 7996, 7997 and 7998. We think that by virtue of this statute and of other statutes which will be considered later they became and are a corporation, at least de facto, and that the title to the property in controversy passed to and vested in such corporation.

The statute we are now considering authorizes two or more incorporated churches, congregations or religious societies to "consolidate and reorganize as a single church, congregation or society" in the manner therein provided. That the two congregations complied in form with all the requirements of the statute; that all the members of both congregations acquiesced in the consolidation; that the members of both congregations have acted as a single consolidated congregation ever since; and that the consolidated congregation has at all times assumed to act and conduct its affairs as a

corporation under the name "Mabel First Lutheran Church," is undisputed. But it is urged that only incorporated congregations are authorized to consolidate under this statute and that no consolidated corporation could be formed because the brick church congregation was not incorporated. If that congregation had been incorporated, there would have been a consolidated corporation de jure under that statute. But conceding that their acts did not create a corporation de jure under that statute, we think they did create a corporation de facto.

In Toledo, St. L. & K. C. R. Co. v. Continental Trust Co. 36 C. C. A. 155, 167, 95 F. 497, 508, the circuit court of appeals of the sixth circuit, in an opinion by Justice Lurton, then circuit judge, held that a consolidated corporation, although not a corporation de jure because some of the companies forming it were not of the character authorized to form such a corporation, was nevertheless a corporation de facto. Among other things the court said:

"A defect in the qualification of some of the constituent companies might affect the de jure character of such an organization, and, when challenged by the state, demand a judgment of ouster. The test of a de facto corporation is this: Was there a law under which there might have been a de jure corporation of the kind, character, and class to which the organization in question apparently belongs? It is the apparent legality of the organization which gives it its de facto character. If there was no law under which an Illinois consolidated corporation could exist, there could be no de facto consolidated corporation. The possibility of a de jure corporation is the only condition requisite to a de facto corporation. It is not a sound test that the particular constituents could not have become a de jure consolidated corporation. That would open every such organization to parol attack, and destroy its de facto character, not by showing the impossibility of a de jure corporation of the kind in question, but by evidence affecting the internal history of the parts composing the whole. Suppose the law had permitted any two noncompeting railroad companies to consolidate; would it be admissible to destroy the de facto consolidation of two railroad

corporations by evidence that they were in fact competing companies? We think not. The sovereign power of the state might by a proper proceeding dissolve the union, as one not authorized by law; but neither the corporation itself, nor its members, nor those who dealt with it as a corporation, would be allowed to deny its de jure character for the purpose of defeating liabilities incurred in its character as a corporation. * * * The disqualification of the corporators or of the constituents composing a consolidated corporation does not affect the validity of the acts and contracts of the organization, if there was a law under which there might have been a de jure consolidated corporation of the class to which the de facto corporation belongs. This question was directly considered by this court in the case of Ashley v. Board, 16 U. S. App. 656-668, 8 C. C. A. 455, and 60 Fed. 55."

See also Leavenworth Co. Commrs. v. C. R. I. & P. Ry. Co. 134 U. S. 688, 10 S. Ct. 708, 33 L. ed. 1064; Baltimore & P. R. Co. v. Fifth Baptist Church, 137 U. S. 568, 11 S. Ct. 185, 34 L. ed. 784; 7 R. C. L. 157, § 130; 14 C. J. 223; 14A C. J. 1066, § 3652. If the consolidated corporation in question is not a corporation de jure, the facts are sufficient to bring it within the class of corporations de facto.

Corporations de facto possess the same rights and privileges, and may exercise the same powers and functions, as if corporations de jure. They may acquire, take and hold property, both real and personal, as if corporations de jure; and their right to do so cannot be questioned collaterally but only in direct proceedings by the state to oust them of their corporate character. 7 R. C. L. 67, § 48; 14 C. J. 208, § 217.

[5] Section 7998, G. S. 1923, above cited, provides among other things, that upon the formation of a consolidated church corporation, "all of the property of every kind and nature of the original corporation shall vest in the new corporation," and that the new corporation shall be liable for all the obligations of the several corporations so consolidated. We think that under this statute all

the property rights of both the frame church organization and the brick church organization vested in plaintiff.

But it is urged that the brick church organization had no property rights in the lots in controversy. Olson and Erickson paid the purchase price of the lots, but it clearly appears that they paid the purchase price as a part of their contribution toward the church, and that they and the Reverend Seehus took the title to the lots for the purpose of holding them in trust for the church organization as a site for the church and not otherwise. The entire congregation, including the grantees in the deed, have recognized this as the situation for 20 years. The deed ran to the grantees "as trustees for the First Evangelical Church of Mabel," and it is urged that there was no such organization. It is true that this name differs somewhat from the name adopted by the organization, but the court found that the name in the deed, the name adopted by the congregation, and other variations of the name used at different times all referred to and intended the same church organization; and the evidence leaves no doubt that such was the fact. It is also true that the organization so intended was not a corporation but a voluntary association with a fluctuating membership.

[6] Section 7971, G. S. 1923, reads:

"Lands, tenements, or hereditaments conveyed by devise, grant, purchase, or otherwise, to any persons as trustees in trust for the use of any religious society heretofore or hereafter organized, for a meeting house, burial ground, or parsonage, with the improvements thereon, shall descend in perpetual succession, and be held by such trustees in trust for such society."

This provides for unincorporated religious societies; if incorporated they have no need of trustees to hold such titles unless so provided in the articles of incorporation. This statute was a part of the laws of Wisconsin which became the law of Minnesota when it was organized as a territory, and has remained in force ever since. Under it a conveyance to trustees for the use of an unincorporated church society for the purposes named is valid and vests the legal title in such trustees who hold it in trust for such purposes. Strong

v. Doty, 32 Wis. 381; Fadness v. Braunborg, 73 Wis. 257, 41 N. W. 84; Cape v. Plymouth Congregational Church, 117 Wis. 150, 93 N. W. 449.

This statute seems to have been considered by this court in only one case, Lane v. Eaton, 69 Minn. 141, 71 N. W. 1031, 38 L. R. A. 669, 65 A. S. R. 546, in which it is said that the statute abrogates the rule against perpetuities and restraints of alienation as to such conveyances. This is in accord with the holding of the Wisconsin court although no reference is made to the Wisconsin cases; but the remark that the trustees referred to are trustees of the church and not other persons selected by the grantor is directly contrary to the Wisconsin cases.

[7] In the Lane case property had been devised to trustees for the use of the branch of the Salvation Army located in St. Paul, an unincorporated religious society, and the action was for a construction of the will. The court quoted G. S. 1894, § 3048, and held that if this branch of the Salvation Army should become incorporated as provided therein the title to the property so devised would vest in the corporation so formed. This statute, as recast in the revision of 1905, was placed in the subdivision entitled *Religious Corporations,* and is now G. S. 1923, § 7986. It provides:

"Every church or society organized as such, and not incorporated, may become a corporation by executing, acknowledging, and causing to be recorded with the proper officers a certificate of incorporation under this subdivision. And thereupon, and also when any existing religious corporation shall reincorporate under this subdivision, all property and franchises of every kind belonging to such society or such original corporation, as the case may be, shall vest in the corporation so organized."

This statute as it stood before the revision expressly provided that upon an unincorporated religious society's becoming incorporated all property theretofore lawfully conveyed to such society or to trustees for its use "shall thereupon vest in said corporation as fully and amply as if the said church had been legally incorporated

from the date of its religious organization." The change in verbiage was not intended to restrict this right, but to express in short form that all property acquired for the church, however held, vested in the corporation when formed. This statute also authorizes existing church corporations to reincorporate, and provides that in case of such reincorporation the title to all its property shall vest in the new corporation.

When two church societies, one being incorporated and the other not incorporated, conclude to consolidate into one, we see no reason why they may not form a corporation under this statute. One is entitled to incorporate under it, the other to reincorporate under it. Why may they not combine and form a single corporation, the one becoming incorporated, the other reincorporated in the new organization? However this may be, the two societies in question have created what is at least a de facto consolidated corporation which includes both and has succeeded to the property rights of both; and we are of opinion and hold that the title to the property in controversy has vested in that corporation.

[8] Furthermore, the defendants as officers of the brick church society took an active part in constructing the church building upon these lots with church funds. The matter of incorporating the society was confided to them, but they neglected to attend to it. They have been active in the affairs of the society ever since it was organized, and during all the time the society existed as a separate congregation they recognized and treated it as the owner of the property and were parties to the expenditure of its funds in maintaining the property. They were also parties to the consolidation of the two societies and to the proceedings to incorporate the consolidated society, and for some years thereafter recognized and treated the consolidated organization as the owner of the property. In view of all the facts, including the long continued conduct of defendants and of all other parties in interest, the defendants may well be held to have estopped themselves from asserting title to the property as against plaintiff. See Foster v. Moulton, 35 Minn. 458, 29 N. W. 155; Columbia Electric Co. v. Dixon, 46 Minn. 463, 49 N. W. 244; Hause v. Mannheimer, 67 Minn. 194, 69 N. W. 810.

Although we are unable to sustain the finding that plaintiff acquired title by adverse possession, yet the undisputed and conceded facts establish that the title has vested in plaintiff, and that plaintiff is entitled to judgment as directed by the trial court.

The order denying a new trial is affirmed.