Ruth Katherine **ANDERSON**, Appellant,

v.

Richard D. **LINDGREN**, Jr., Wisconsin Homes, Inc., State Bank of Barnum, The Officers of the State Bank of Barnum, et al., Robert Hall, Respondents.

No. C8–84–1261.

Court of Appeals of Minnesota.

Dec. 18, 1984.

Paul Engh, Minneapolis, for appellant.

Alfred J. Weinberg, Duluth, for respondent Lindgren.

Richard A. Beens, Anoka, for respondent Wisconsin Homes.

Gaylord W. Swelbar, Duluth, for respondent State Bank of Barnum.

Leonard A. Wilson, Jr., Cloquet, for Officers of State Bank of Barnum.

Leonard A. Wilson, Jr., Cloquet, for Hall.

Considered and decided by CRIPPEN, P.J., and HUSPENI, and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

This is an appeal by appellant Anderson from a directed verdict in favor of defendants and from the trial court's award of attorney's fees against Anderson and her attorney. We affirm.

## FACTS

The 18 unit Sturgeon Lake Motel opened its doors in September 1979, seven months after the scheduled completion. It was the retirement dream of Ruth Anderson, who had been postmistress for the town of Barnum. Initially Anderson invested $35,000 in savings and land worth $36,500 in the venture. She testified that her total loss in operating the motel was $85,000. On July 6, 1982, 33 months after opening, the motel closed because of a delinquency in mortgage payments. The present suit was commenced in 1980. It came to trial for two weeks in 1984. The court directed a verdict in favor of all the defendants, and awarded attorney's fees against Anderson and her attorney totalling $20,554.50. Anderson's distinct claims against each defendant are set forth separately.

*Robert Lindgren*

Lindgren was general contractor in charge of constructing the Sturgeon Lake Motel. He earned the project as lowest bidder for $218,000, and contracted to finish the job by January 30, 1979. Although this deadline was extended two weeks, he still had not completed the job by midspring, 1979. Two reasons for incompletion were beyond Lindgren's control. The unusually severe winter hampered progress, and delivery of eighteen prefabricated motel rooms by Wisconsin Homes was late.

A plumbing problem, most of which was corrected by spring 1979, also plagued the project. While Anderson alleged that Lindgren contributed to the delay occasioned by that problem, she presented no evidence to substantiate that allegation. Both Lindgren and his subcontracting plumber testified that the plumbing problems were minor, did not pose a health problem, and could have been corrected without interfering with motel business. This testimony was fully corroborated by Anderson's own witness, the plumbing inspector who discovered the problems.

Anderson also claimed that the motel project was delayed because Lindgren walked off the job by the summer of 1979 without having landscaped or blacktopped the parking lot. This is conceded although Lindgren testified he abandoned the project because of harassment by Anderson and her family members, two of whom were subcontractors working under him. However, Lindgren was not paid for what he did not complete. The estimated cost of blacktopping was $15,087. At the time Sturgeon Lake Motel opened, there was $17,293.44 remaining in the construction account—enough to cover the improvement. This money eventually was returned to the lender. Anderson never had the lot blacktopped during the entire time that she operated the motel.

Anderson further claimed that relocation of the motel's well caused her damage. She had agreed to move the well from its specifications in the blueprints. She was not happy with the ultimate location because it purportedly impeded semi-trailer traffic on her premises. Cross-examination revealed that the well was placed in an area never intended to have been blacktopped. Thereupon Anderson complained that she was damaged because the well's location did not conform to the blueprints. However, this is inconsistent with her testimony that she agreed to the relocation. Finally, Anderson testified that her sons had graded a road to solve the semi traffic problem. In any event, she could not specify the amount of business lost due to location of the well.

Anderson claimed that the septic system was not correctly located. However, she failed to produce competent evidence that

she was damaged as a result thereof during her operation of the motel.

## Wisconsin Homes

Wisconsin Homes provided prefabricated modular units which were to be motel rooms. Delivery was late and there were numerous defects ranging from broken doorknobs to leaking hot water heaters to a sagging roofline. Prior to trial, Wisconsin Homes settled with Anderson for $1,500.

## Robert Hall

Robert Hall is a third-party defendant brought into the litigation by the bank. Anderson has no direct claim against Hall. Robert Hall was a subcontractor in charge of installing the plumbing. He performed his job in accordance with the contract specifications. Some of those specifications did not conform to code. As a result, part of his work had to be redone. He and Lindgren worked out an agreement to redo the work which for reasons not relevant to this case fell through. Eventually the repairs were completed by a third contractor.

## Bank of Barnum

The motel construction was financed by a $235,000 Small Business Administration (SBA) loan which was serviced by the Bank of Barnum. To obtain the loan, Anderson was required to contribute $35,000 equity capital and land valued at $36,500. $8,000 of Anderson's equity capital was used for downpayment to Lindgren. Anderson later alleged this $8,000 was misplaced and that other funds were wrongfully disbursed. However, Anderson always countersigned or otherwise reviewed the payments.

Anderson claimed that the bank owed her a duty to inspect the premises under federal regulations that govern SBA loans. No evidence was presented to show that the bank undertook inspections on her behalf. Some testimony did indicate that the bank was willing to help her resolve problems with Lindgren.

Although SBA guidelines require the contractor to obtain a performance bond, none was obtained here. Anderson claimed that the bank misled the SBA into believing that a bond had been obtained. Evidence indicated that a letter from the bank to the SBA acknowledged that the bond requirement was being waived. At trial, Anderson testified that the project would not have gotten off the ground unless the bond was waived, and that she was aware of Lindgren's efforts to get the bond waived. However, she continued to maintain that she did not know about the waiver, and insisted that she had been told the project had been bonded. Under the loan agreement, it was Anderson's duty to obtain the bond. Ultimately, her claim that the waiver damaged her was unsupported by any credible evidence.

Anderson was given a six-month moratorium on the payment of her loan. Principal and interest payments were scheduled to begin in July 1979. She operated the motel without ever making a single payment. At the time of foreclosure, she owed the bank $78,834.14 in interest. Any recovery in this lawsuit was to offset her debt.

## Bank Officers

Anderson sued the bank officers individually. She had no personal contact with most officers. Any liability on their part would be derivative, if at all.

## The Trial

The jury trial lasted several days. The conduct of Anderson's counsel became an issue. The transcript reflects frequent spurious objections and interruptions. It further indicates that he shouted at opposing counsel, made rude gestures to the court, and at times indulged in "tirades."

Anderson's theory of the case was never clear. At one point, her attorney apparently claimed no monetary damages. Then he claimed loss of investment, plus out-of-pocket expense. On cross-examination, Anderson could not describe how she arrived at "loss of income" totalling $85,000.

Anderson's own testimony was contradictory. At one point she said "we had really good business, we had good business all the time." Shortly thereafter, she said that she was unhappy with the financial progress of the motel. She admitted that she knew Lindgren had not obtained a per-

formance bond. She also denied knowing it. She claimed that there was not enough money to complete the blacktopping, but was aware of the surplus in her building fund at the time the motel opened. She agreed to move the location of the well, but complained that the relocation was not according to the original specifications. She testified that she put approximately $1,000 per month into the business although it had only a nominal cash loss over the period of operation. She introduced no evidence to show what her projected earnings might have been had she opened before September 1979.

At the close of Anderson's case, the trial court directed a verdict in favor of all the defendants. It concluded that Anderson did not meet her burden of proof with respect to damages as to any defendant and as to liability on the part of the bank, its officers, and Robert Hall. The court further awarded attorney's fees against Anderson and her attorney to the bank for $14,554.50, to the bank officers for $3,000, and to Robert Hall for $3,000. No fees were awarded to Lindgren. The court indicated that the claims were frivolous and brought in bad faith. The court went on to note certain behavior of Anderson's attorney which was not apparent in the record: making inappropriate facial expressions, loudly demanding mistrial in front of the jury, reprimanding his own client for telling the truth, whispering "error" loudly when the judge delivered an adverse evidentiary ruling, engaging in generally disruptive activity. None of this has been denied by Anderson on appeal. Anderson has retained a different attorney for this appeal.

## ISSUES

1. Did the court err in directing a verdict against Anderson?

2. Did the court err by awarding attorney's fees against both Anderson and her attorney?

## ANALYSIS

■ 1. In reviewing a directed verdict granted to the defendant, the evidence must be judged in the light most favorable to the plaintiff. *Midland National Bank of Minneapolis v. Perranoski*, 299 N.W.2d 404 (Minn.1980). In an extreme case, however, the court need not always defer to the credibility of plaintiff's evidence. *Stotzheim v. Djos*, 256 Minn. 316, 319, 98 N.W.2d 129, 131 (1959).

■ Anderson lost her capital investment of $35,000, plus land worth $36,500. No evidence links this to a breach of contract by Lindgren. Though Lindgren walked off the job, his compensation did not exceed his services. Whatever he did not complete could have been accomplished with the balance of the loan proceeds. What was left in disrepair was corrected at no additional cost to Anderson. The trial court did not err by concluding that Lindgren did not damage Anderson.

Anderson had no direct claims against Hall. Even if she had, the trial court did not err in concluding that Hall was not responsible for Anderson's loss.

No evidence implicated the bank. The court did not err in concluding the bank did not misinform the SBA about the performance bond waiver, and that the claim regarding the misappropriation of funds was frivolous. Even if the bank could be found to have gratuitously inspected the motel premises on behalf of Anderson, the record is totally silent as to any damage resulting therefrom.

Anderson lost her investment because the operation of the Sturgeon Lake Motel was unsuccessful. The trial court recognized that Anderson's loss of her investment was not attributable to the defendants. Anderson presented no evidence to indicate that the motel would have prospered by an earlier opening. Therefore, if the defendants had impaired the operation of the motel, the damages relating to lost profits on this new enterprise would have been too speculative to permit recovery. *See Leoni v. Bemis Co., Inc.*, 255 N.W.2d 824 (Minn.1977).

2. Attorney's fees may be awarded against a party or an attorney who acts in bad faith or who asserts a frivolous claim. Minn.Stat. § 549.21 (1982). The award of fees is within the discretion of the trial court. *Blattner v. Forster*, 322 N.W.2d 319 (Minn.1982). Therefore, our scope of review is narrow. *See Kuller v. Kuller*, 260 Minn. 256, 260, 109 N.W.2d 561, 564 (1961).

The trial court recounted specific behavior by both Anderson and her attorney before awarding attorney's fees. The trial judge observed this behavior first hand. It was his opinion that their acts amounted to bad faith. Because of the trial court's unique vantage point, we defer to its decision. *See Tamarac Inn, Inc. v. City of Long Lake*, 310 N.W.2d 474, 477 (Minn.1981). We do not presume to substitute our judgment for that of the trial court. *See Blixt v. Civil Service Board*, 297 Minn. 504, 505, 210 N.W.2d 230, 232 (1973).

The court was aware that its decision was "frankly, distasteful." We agree with the trial court's characterization of this judicial function. We do not conclude that the trial court acted capriciously nor that it abused the broad discretion granted to it. However, we do not endorse the award as the only, or even as the most appropriate, method by which to deal with recalcitrant parties or counsel. Courts have at their disposal less intrusive sanctions and cautions which should be explored and exhausted before resorting to an award of attorney's fees.

## DECISION

We affirm the directed verdict and the award of reasonable attorney's fees.