**ALMAC, INC., Respondent,**

**v.**

**JRH DEVELOPMENT, INC., Defendant,**

**James R. Hill, Appellant.**

**No. C8–85–2324.**

Court of Appeals of Minnesota.

Aug. 19, 1986.

Review Denied Oct. 17, 1986.

Christopher J. Dietzen, Peter J. Coyle, Bloomington, for respondent.

Mark E. Fuller, Bloomington, for defendant.

Considered and decided by CRIPPEN, P.J., and LESLIE and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

Respondent Almac, Inc. sued JRH Development, Inc. and its president, James Hill, to collect on a promissory note backed by a mortgage. The trial court decided James

Hill was personally liable on the note. James Hill appeals, claiming respondent should not have been allowed to pierce the corporate veil. We reverse.

## FACTS

Appellant James Hill is engaged in various business enterprises. He is president of James R. Hill, Inc., a civil engineering firm. He was president of JRH Development, Inc., now insolvent, a home building and remodeling firm.

Appellant formed James R. Hill, Inc. in 1977 with himself as president. Appellant and his wife are the corporation's sole shareholders. In 1977, the corporation began platting and registering a tract of land known as Island View II, owned by Almac, Inc., a real estate development firm. When the engineering work was completed in 1982, Almac attempted to sell parcels to prospective homebuilders. The lots, however, were slow to sell. Dennis McWilliams, president of Almac, Inc., approached appellant with the suggestion that appellant purchase a parcel and build a speculation home, one built with the purpose of resale. McWilliams offered to sell the lot to appellant for $55,000, with a $1000 down payment and $54,000 mortgage. McWilliams also offered to lend appellant the $1000 down payment.

Appellant decided he would accept McWilliams' offer. He decided, however, to form a corporation to purchase and develop the land. Appellant therefore formed JRH Development, Inc.; he signed the corporation's articles of incorporation on November 18, 1980. The parties signed the purchase agreement for the property on November 24, 1980. Appellant signed the agreement expressly on behalf of JRH Development, Inc. The secretary of state issued the corporation's certificate of incorporation on December 1, 1980.

JRH Development, Inc. was initially capitalized with $1000. Appellant was named as president of the corporation. Appellant's wife Sue was named as secretary. They are the corporation's sole shareholders. The board of directors held an initial meeting, at which time the bylaws were adopted but not executed. The corporation filed all necessary tax returns and applied for worker's compensation insurance.

The parties closed the real estate transaction on February 11, 1981, when they signed a promissory note and real estate mortgage agreement for the purchase. Appellant signed the note and mortgage agreement on behalf of JRH Development, Inc. He did not sign a personal guarantee for the note. On the same day, a mortgage was executed in favor of Peoples Savings & Loan Association. Peoples agreed to lend JRH Development $105,000 for the construction of a home on the land the corporation purchased. Almac agreed to sign a subordination agreement, so Peoples received a first mortgage on the property. Appellant personally guaranteed the Peoples' note.

JRH Development, Inc. proceeded to build a house on the lot. Construction was commenced in the spring of 1981 and completed the following fall. The corporation also remodeled a retail outlet in Burnsville.

JRH Development, Inc. unsuccessfully attempted to sell the Island View II property. The corporation did not realize profits, and appellant individually and on behalf of James R. Hill, Inc. financed JRH Development, Inc. for three years. When appellant and James R. Hill, Inc. ceased to finance JRH Development, Peoples Savings & Loan commenced foreclosure proceedings. JRH Development allowed the time for redemption to lapse, as did Almac, Inc.

Almac, Inc. brought suit on the note against James Hill, seeking to hold him personally liable for the unpaid mortgage balance. The trial court found that JRH Development, Inc. was the alter ego of James Hill and allowed Almac to pierce the corporate veil. The trial court also awarded Almac $10,000 in attorney's fees. James Hill appeals, claiming he did not disregard corporate formalities and that the trial court erroneously ordered him to pay $10,000 attorney's fees.

## ISSUES

1. Did the trial court properly permit Almac to pierce the corporate veil of JRH Development, Inc.?

2. Should appellant James Hill be found liable under a promoter liability theory?

## ANALYSIS

■ 1. Disregard of the corporate entity will allow a creditor of the corporation to hold shareholders liable for a corporate obligation. *See Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509, 512 (Minn.1979). A creditor will be allowed "to pierce the corporate veil" of protection from liability and hold shareholders liable only when a two-prong test is met. *See id.* A court will first consider whether the corporation was formed either as the shareholders' "alter ego" or as their "mere instrumentality." *Id.* If that prong is met, the court will allow the corporate veil to be pierced if there exists an element of injustice or fundamental unfairness. *Id.* To determine whether the first prong is met, a court will consider several factors, including the sufficiency of the capitalization for the purposes of the corporate undertaking, whether the directors failed to observe corporate formalities, whether the corporation failed to pay dividends, whether the corporation was insolvent at the time of the transaction, whether the dominant shareholder siphoned corporate funds, whether other officers and directors were nonfunctioning, whether corporate records were absent, and whether the corporation existed merely as a facade for individual dealings. *Id.* (citing *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 685–86 (4th Cir.1976). If "a number of these factors [are] present," this first prong is met and the court will then consider whether the "injustice or fundamental unfairness" prong is met. *Id.* (citing *DeWitt Truck Brokers, Inc.*, 540 F.2d at 687). If both prongs of the test are met, the creditor will be allowed to pierce the corporate veil and hold the shareholders liable because "to allow an individual to escape liability because he does his busi-

ness under a corporate form is to allow him an advantage he does not deserve." *Id.* The *Victoria Elevator* court pointed out that the mere fact the corporation was formed to avoid liability is not dispositive:

> Doing business in a corporate form in order to limit individual liability is not wrong; it is, in fact, one purpose for incorporating.

*Id.*

In this case, respondent Almac, Inc. claims and the trial court found that a number of the *Victoria Elevator* factors were present. We must affirm those findings of fact unless clearly erroneous. Minn.R.Civ.P. 52.01. The trial court found that the corporation was undercapitalized, and respondent argues that the evidence supports that finding because appellant capitalized the corporation initially with only $1000. Respondent claims appellant needed at least $40,000 to properly capitalize the corporation. The trial court also found that appellant ignored corporate formalities. Respondent claims the board of directors never met, never executed the corporation's bylaws, and never drafted a corporate document that allowed appellant to purchase the real estate or to incur any corporate debt. Furthermore, respondent claims, the corporation did not have a checking account until February 1986, the corporation had no employees and received rent-free space in the office of James R. Hill, Inc., and there were no records of corporate transactions. Respondent claims that it was appellant's "carelessness and recklessness" that caused his failure to abide by the rules of incorporation.

Appellant admits the corporation was funded initially with only $1000, but claims that was not improper because a corporation can be funded over time. He claims he personally poured money into the corporation and that James R. Hill, Inc. loaned money to the corporation. He claims there are records of the corporation's transactions, as evidenced by the checks received as loans from appellant and James R. Hill, Inc. and the promissory note executed by Almac, Inc. and appellant for the corpora-

tion. Appellant admits the corporation never paid dividends, but claims that was not improper and does not necessarily justify piercing the corporate veil. *See Snyder Electric Co. v. Fleming,* 305 N.W.2d 863, 868 (Minn.1981) (nonpayment of dividends is not improper when all funds were put back into the corporation).

The *Snyder* case is not unlike this one. In *Snyder,* the corporation, a sheet metal company, had stated capital at all times of $5000. *Id.* at 866, 868. The corporation never paid dividends; earnings were retained to provide operating capital. *Id.* at 866. The sole shareholder loaned additional capital to the closely held corporation. The corporation prospered at first, then began showing a loss and finally became insolvent. *Id.* Creditors of the corporation attempted to hold the sole shareholder personally liable. *Id.* The trial court would not allow the piercing of the corporate veil, and the supreme court affirmed that part of the trial court's decision. *See id.* at 869. The supreme court found that the corporation was not undercapitalized because the corporation's "total equity (stated capital plus shareholder loans plus retained earnings) kept pace with corporate liabilities until the drastic losses started * * *." *Id.* at 868. That is true of JRH Development, Inc. as well. The trial court stated in *Snyder* that " '[a]ny business which fails can probably be said to have been undercapitalized.' " *Id.* The same observation could be made in this case.

■ The trial court in this case determined that JRH Development, Inc. was undercapitalized. That finding is erroneous and must therefore be reversed. The corporation's total equity kept pace with the corporate liabilities until appellant could no longer bear to plow any more of his personal funds into the corporation. Under *Snyder,* the mere fact the corporation became insolvent does not mean the corporation was undercapitalized.

■ Respondent argues that Dennis McWilliams thought he was dealing with appellant individually when he transacted the real estate sale with appellant. The

trial court found that the parties intended that appellant would himself be personally liable for the promissory note. This finding is erroneous: respondent admits JRH Development, Inc. was formed primarily as a result of the real estate transaction, and appellant signed the promissory note expressly on behalf of the corporation. The trial court found it persuasive that the corporation's creditors billed appellant directly instead of billing the corporation. That is not conclusive regarding the corporation's dealings with respondent. The fact that other creditors thought they were dealing with appellant instead of the corporation has almost no bearing upon the relationship between appellant's corporation and respondent. Respondent knew appellant was acting on behalf of his corporation.

■ Respondent's other arguments are erroneous as well. The fact the board of directors never met does not mean the directors are not abiding by corporate formalities. *See* Minn.Stat. § 302A.231, subd. 1 (1984) (board of directors may meet from time to time, as required by the corporation's bylaws). The fact appellant acted without benefit of sanction from the corporation's directors is not determinative, especially in the case involving a closely-held corporation where the only directors are a husband and wife. *See Snyder,* 305 N.W.2d at 868 (directors in a closely-held corporation may be passive). Appellant did not siphon funds from the corporation, but instead pumped his own money into the corporation to keep it afloat. Only when the speculation house failed to sell did appellant cease to lend funds to the corporation.

■ The evidence in this case does not support a finding that the first prong of the *Victoria Elevator* test was met. It is equally as evident that the second prong is not met. The trial court stated in its memorandum that

[t]he element of injustice or fundamental unfairness seems to be pretty well covered by Mr. Hill's own testimony that he believed that those "dealing with the de-

fendant J.R.H. Development Co. thought they were dealing with me". If Hill knew this and did nothing to correct that impression, fundamental fairness requires a disregard of the corporate entity.

The trial court is referring to appellant's statements that creditors other than respondent dealt with him instead of with the corporation. As indicated earlier, what others thought has almost no bearing upon the relationship that existed between appellant and respondent. The trial court indicated no other grounds for its determination that the second prong of *Victoria Elevator* was met. The evidence does not support the finding that the transaction here between appellant's corporation and respondent contains elements of injustice or unfairness such that the corporate entity should be disregarded. Although proof of "strict common law fraud" is not required to prove the second prong of the test, there must be proof that the corporation was operated "as a constructive fraud or in an unjust manner." *White v. Jorgenson*, 322 N.W.2d 607, 608 (Minn.1982). The evidence in this case does not sustain proof of the second prong. Appellant did not operate the corporation unjustly or fraudulently. The corporation was formed for bona fide purposes and fulfilled those purposes while it existed. The transaction between the parties was conducted openly in the name of appellant's corporation. The mere fact that other creditors, who had dealt with appellant previously in other transactions, billed appellant individually instead of the corporation does not mean appellant operated his corporation fraudulently or in an unjust manner.

2. Appellant and respondent transacted the real estate sale on November 24, 1980, which is when the parties signed the purchase agreement. Appellant sent his articles of incorporation to the secretary of state on November 18 but did not receive the corporation's certificate of incorporation until December 1, 1980. The corporation existence does not commence until the articles of incorporation are filed with the secretary of state. Minn.Stat.

§ 302A.153 (1984). It is unclear whether the articles of incorporation were filed before or after the transaction at issue here, although it appears the articles were not filed until sometime after the execution of the purchase agreement. Therefore, respondent argues, appellant signed the purchase agreement in his capacity as corporate promoter for JRH Development, Inc. The issue presented is whether under these facts appellant can be held individually liable under a promoter liability theory.

A promoter of a corporation yet to be formed may make contracts for the corporation. Once the existence of the corporation is established, the corporation will be liable upon those contracts if it adopts them. *Veigel v. O'Toole*, 183 Minn. 407, 411, 236 N.W. 710, 711 (1931). Even if a corporation adopts the contracts made by a promoter, the promoter remains individually liable for the contract unless the parties agree that the promoter will not be individually liable. *See State v. Industrial Tool & Die Works, Inc.*, 220 Minn. 591, 601, 21 N.W.2d 31, 37 (1945). *See generally* Annot., 41 A.L.R.2d 477, 512 (1955).

There will be no promoter liability, however, if, at the time the contract was executed, a corporation existed. Minnesota Statutes Chapter 302A details the requirements for the formation of corporations. The law gives equal recognition to de facto corporations. *See Mabel First Lutheran Church v. Cadwallader*, 172 Minn. 471, 478, 215 N.W. 845, 848 (1927). A de facto corporation exists when there is

(1) some law under which a corporation with the powers assumed might lawfully have been created; (2) a colorable and bona fide attempt to perfect an organization under such a law; (3) user of the rights claimed to have been conferred by the law.

*Evens v. Anderson*, 132 Minn. 59, 61, 155 N.W. 1040, 1041 (1916).

There is no question that appellant's corporation was formed for lawful purposes and could lawfully have been created. There is also no question that appel-

lant made a "colorable and bona fide attempt to perfect an organization" under this law, and appellant himself was a user of the rights claimed to have been conferred. The *Evens* test was met, and a corporation de facto existed at the time appellant executed the note for the JRH Development Corporation. Appellant was not acting as a promoter, but was acting as an officer of the corporation. Respondent could look only to the corporation for payment of the corporate debts. *See Richards v. Minnesota Savings Bank,* 75 Minn. 196, 206–07, 77 N.W. 822, 824 (1899).

The trial court awarded respondent $10,000 in attorney's fees, which appellant claims was error. The trial court has broad discretion in the awarding of attorney's fees. *Anderson v. Lindgren,* 360 N.W.2d 348, 353 (Minn.Ct.App.1984). The agreement between the parties provided that the corporation would pay respondent's costs if court intervention was required for the enforcement of the agreement. Therefore, it is the corporation, not appellant individually, that is responsible for the corporate debts, of which a creditor's attorney's fees would be part. The trial court improperly ordered appellant to pay attorney's fees.

## DECISION

The trial court erred in determining that appellant was individually liable for the mortgage and promissory note to Almac, Inc. The trial court also erred in determining that appellant was liable under a promoter liability theory. The trial court erroneously ordered appellant to pay $10,000 in attorney's fees.

Reversed.