## MANUFACTURERS BUILDING, INC. v.
## NATHAN HELLER AND OTHERS.
## NATHAN H. HELLER AND ANOTHER v.
## LOUIS SACHS AND ANOTHER.

235 N. W. 2d 825.

November 14, 1975—No. 45065.

*Sachs, Latz & Kirshbaum* and *Louis Sachs,* for appellants.
*Simon, Schneider & Marker, Ralph S. Schneider,* and *Howard S. Marker,* for respondents.

Heard before Otis, Peterson, and MacLaughlin, JJ., and considered and decided by the court en banc.

OTIS, JUSTICE.

These consolidated actions arose out of the common ownership by appellant Louis Sachs, respondent Nathan Heller, and Z. A. Dworsky, and their respective spouses, of an office building in Minneapolis. In one action appellant Manufacturers Building, Inc., a corporation organized to manage the building, sought damages for fraud and breach of trust from Heller and corporations allegedly controlled by him. In the other, Heller and his wife sought an accounting from Sachs and Dworsky for rents

received and not distributed to the owners. The trial court denied Manufacturers recovery and granted Heller an accounting and damages in the amount determined due him as a result of the accounting. We affirm.

As found by the trial court, in the year 1947 Louis Sachs, Nathan Heller, Z. A. Dworsky, and Bert Bloch purchased a five-story office building at the southeast corner of First Avenue North and Fourth Street, known as the Ressler Building, in downtown Minneapolis. The four purchasers formed a corporation named Manufacturers Building, Inc., to take title to the Ressler Building. Each of the four received $2\frac{1}{2}$ shares of capital stock in the corporation. Bloch assigned his interest to Heller in 1963. The court found that the corporation was simply an agent or conduit for handling the accounts of the Ressler Building, and that the stockholders were, in legal effect, actually partners. There is no record of a corporate dividend ever having been declared, and the operation of the building was reported on a partnership income tax return.

This litigation arose out of the occupancy, as tenants, by Bloch and Heller of a part of the Ressler Building where they conducted a sportswear manufacturing business. Heller had a controlling interest in the business, the Bloch Heller Company, sometimes referred to as the "B-H Co." The evidence disclosed, and the court found, that in April 1965 the accountants of B-H Co. reported to Heller that his company had sustained severe financial reverses over the preceding several months and that drastic steps were required to reorganize and salvage the business, which included the substantial infusion of new money. B-H Co. paid no rent to Manufacturers for April, May, or June 1965. The court found:

"In May, 1965, Heller discussed with Sachs, Bloch Heller's circumstances and expressed to him the hope that a refinancing arrangement would imminently be effected—a hope which never materialized. Sachs, however, pressed for immediate payment

of rent and threatened to evict Bloch Heller. In June, 1965, Sachs did commence unlawful detainer proceedings against Bloch Heller. The unlawful detainer action was suspended by reason of the Chapter XI proceedings which had been initiated in the Federal District Court."

In June 1965, Heller brought bankruptcy proceedings on behalf of B-H Co. which prevented Manufacturers from securing possession of the area occupied by B-H Co. until March 31, 1966, when Heller assigned his interest in Manufacturers to his daughter, Beatrice Rappaport, and son-in-law, Gary B. Rappaport. At that time, the court held, the partnership ended.

The court made the following finding with respect to Heller's obligation to Sachs and Dworsky:

"* * * No evidence was adduced justifying a finding of any fraudulent misconduct or a breach of faith or trust on the part of Heller in derogation of his obligation to Sachs and Dworsky or to Manufacturers with respect to the business affairs of Bloch Heller and Gala in the ensuing Chapter XI proceedings and the subsequent terminal bankruptcy proceedings."

In its conclusions of law, the court held that Manufacturers was not entitled to recover against Heller and that Heller was entitled to an accounting for all receipts and moneys attributable to his partnership with Sachs and Dworsky arising out of the operation of the Ressler Building for the period from January 1, 1965, until March 31, 1966. The court further held that Heller was entitled to receive half of the net profits of the partnership business during that period and referred the matter to a referee to secure an accounting from Sachs and Dworsky. The court adopted the referee's finding that Heller was entitled to the sum of $10,334.71 generated by the partnership and consisting of his share of the income from the Ressler Building. We hold that the court's findings are not "clearly erroneous" as defined by Rule 52, Rules of Civil Procedure, and therefore affirm.

In essence Sachs claims that because Heller was an officer and

director of Manufacturers Building, Inc., he had a conflict of interest in his capacity as a tenant of the Ressler Building and that he failed to make a full disclosure of his financial straits to his partners and wrongfully diverted rentals belonging to Manufacturers by invoking the Federal bankruptcy law, thereby preventing Manufacturers from securing restitution of the leased premises.

Sachs treats Manufacturers' action against Heller as a derivative suit and takes the position that Manufacturers is a conventional corporation which was created for the purpose of managing the Ressler Building. The trial court properly disregarded the corporate veil and treated Manufacturers as simply a convenient depository and conduit for rentals from the Ressler Building to the three remaining partners, Sachs, Dworsky, and Heller. The practical effect of their relationship was to make them partners and tenants in common of the building. As such, each had a right to use and enjoy the premises on whatever contractual terms they agreed to. Sachs and Dworsky acquiesced for many years in Heller's company occupying a part of the building as a tenant. These arrangements were reached by arm's-length negotiations and, as the court found, there was no evidence whatever of fraud, concealment, overreaching, or any undisclosed or any unfair advantage taken of his partners by Heller. Whatever may have been Heller's fiduciary relationship with Sachs and Dworsky as a partner did not deprive him of his right to attempt a rehabilitation of the business he controlled by appropriate proceedings in bankruptcy. In other words, his acting as an officer and director of Manufacturers, which had the function merely of collecting and distributing rents from the premises which Heller's business occupied as a tenant, did not impose on him the duty of foregoing the benefits to which he was entitled under the bankruptcy law in the absence of fraud, deception, concealment, or misrepresentation.

For the reasons stated, there is no merit in the position of Manufacturers that Heller was personally liable as a constructive

trustee for breach of a fiduciary duty to Manufacturers, and Heller was not required to personally compensate Manufacturers for the loss of rental owed by B-H Co. from April 1965 until March 31, 1966.

Sachs, Dworsky, and Manufacturers have attempted to offset other rents and profits from the Ressler Building against their claim for damages against Heller. In view of the fact that the so-called derivative suit for alleged breach of fiduciary obligation on the part of Heller is without merit, the trial court was correct in ordering an accounting which disclosed that Heller's share in the rents and profits from the operation of the Ressler Building were $10,334.71. Accordingly, the judgment in favor of Heller and against Manufacturers, Sachs, and Dworsky is in all respects affirmed.

Affirmed.