**Howard J. GROVES, et al.,**
**Respondents,**

v.

**DAKOTA PRINTING SERVICES, INC.,**
**et al., Appellants.**

**No. C5–85–14.**

Court of Appeals of Minnesota.

July 16, 1985.

Howard J. Groves, Alton, Severson, Sovis, Groves & Chezick, Apple Valley, for respondents.

Harlan P. Klein, West St. Paul, for appellants.

Considered and decided by POPOVICH, C.J., and PARKER and FOLEY, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

Appellants appeal a judgment holding them jointly and severally liable under a lease entered into by Dakota Printing Services, Inc. Appellants claim the trial court erred by (1) finding the terms of the lease to be unambiguous, (2) holding respondents did not waive their right to extend the lease, and (3) piercing the corporate veil and holding the corporation's shareholders liable for the judgment. We affirm in part and reverse in part.

## FACTS

Appellant Dakota Printing Services, Inc. was incorporated on July 29, 1979. Appellants Lyle Gifferson and Maxine Gifferson own all stock in the corporation and are president and secretary/treasurer respectively. On September 12, 1979, the corporation entered into a two year lease for business quarters in a building owned by Marlo Neulib. The lease was a preprinted form with a typed in clause stating, "Additional two year lease option at a negotiated price per square footage price." The lease designated Dakota Printing Services, Inc. the tenant and was signed by Lyle Gifferson on behalf of the corporation. Neulib believed he was dealing with a corporation and no representations were made to the contrary.

In spring of 1980, Neulib sold the building and assigned his interest in the lease to respondents. Respondents knew they were dealing with a corporate tenant. In April 1981, negotiations commenced for the purpose of completing a new lease. The negotiations continued through August 1981 with a final meeting held August 31. The lease expired by its terms on August 31, 1981. The corporation did not vacate the premises, however, and notified respondents on September 10 that it would not be renewing the lease and would vacate by the end of the month.

On September 14, 1981, respondents notified the corporation they were extending the lease for a one year period. Respondents based this extension on a portion of the lease which provided:

> The tenant further agrees to give the lessor written notice thirty (30) days before the expiration of this lease of his intention to vacate at the end of this lease otherwise the lessor will have the option of continuing this lease for one year from and after the expiration of the term of this lease, such remaining in possession shall not, except at the option of the lessor, extend the term of this lease, and the tenant shall promptly vacate said premises; and if for any reason the tenant does not promptly vacate the premises at the end of the term, the tenant agrees to pay the lessor, for such time as elapses between the end of the term of this lease and the time when the tenant actually vacates the premises, a pro rata rental equal to one and one-half (1½) times the rent provided to be paid during the term of such covenant.

Appellants vacated the premises before the end of September 1981 and paid respondents $1500 for September rent.

Respondents sued appellants for amounts due under the extended one year term of the lease. At trial, appellants contended the lease extension clause should not be enforced because it contradicted the typed provision allowing for the negotiation of a two year extension. Appellants also claimed respondents waived their right to extend the lease by continuing to negotiate a new lease until August 31, 1981. The trial court found the lease unambiguous, holding respondents successfully extended the lease for a one year term. The court also rejected appellants' waiver argument.

During trial, the court also heard testimony concerning appellants' business practices. The evidence indicated appellants failed to follow several corporate formalities, lean capitalization of the business, loans to the corporation from Lyle Gifferson, a $35,000 salary paid to Lyle Gifferson, and business documents not indicating the business was a corporation. The trial court found appellants failed to operate the business as a separate business entity and concluded appellants Lyle Gifferson and Maxine Gifferson were personally liable. Judgment was entered against appellants for $16,247, and they appealed.

## ISSUES

1. Were the lease extension clauses ambiguous when read together?

2. Did respondents waive their right to extend the lease for a one year term?

3. Did the trial court err by piercing the corporate veil and holding the corporate shareholders personally liable under the lease?

## ANALYSIS

■ 1. Appellants claim the typewritten provision providing for the negotiation of a two-year lease and form provision for notice of vacancy are ambiguous when taken together. They claim the insertion of the typewritten clause should be interpreted to exclude the provision contained in the form.

"Whether a contract is ambiguous is a legal determination in the first instance." If the contract is unambiguous, the court may construe the provisions of the contract and no extrinsic evidence is necessary.

*Fena v. Wickstrom*, 348 N.W.2d 389, 390 (Minn.Ct.App.1984) (citations omitted). In order for these two clauses to be considered ambiguous, they "must be susceptible to more than one reasonable construction" when read together. *Id.; see Collins Truck Lines, Inc. v. Metropolitan Waste Control Commission*, 274 N.W.2d 123, 126–27 (Minn.1979).

■ The two clauses in this matter are not ambiguous. The typewritten clause permits the parties to negotiate a two year lease. The provision contained in the form governs notice and the lessor's rights if the tenant does not comply with the lease's notice provision. These clauses govern two different circumstances and are not ambiguous. The notice provision contained in the lease is a valid covenant. *See Lowry Realty Company v. Wiles*, 123 Minn. 297, 298–99, 143 N.W. 738, 739 (1913).

■ 2. Appellants claim respondents waived their right to extend the lease by continuing to negotiate regarding a two year extension. Appellants' claim is untenable. Respondents did not indicate they were waiving their rights under the lease. The negotiations between the parties did not allow the corporation to breach the notice of vacancy provision contained in the lease. Even if respondents had waived the right to notice, this did not allow the corporation to remain in possession after the lease expired August 31, 1981 because the lease provided:

The tenant agrees that no assent, express or implied, by the lessor to any breach of any of the tenant's covenants or agreements shall be deemed or taken to be a waiver of any succeeding breach of such covenant.

Respondents did not waive their right to extend the lease for a one year term.

3. Appellants claim the trial court erred by piercing the corporate veil and holding Dakota Printing Services, Inc., Lyle Gifferson and Maxine Gifferson jointly and severally liable under the lease. The trial court's ruling was based on this finding:

The defendants have not conducted their business as a separate corporate entity.

The trial court did not make any other findings in regard to piercing the corporate veil, and the trial court did not prepare a memorandum to accompany its findings.

■ Limited liability for shareholders of corporations is the general rule in Minnesota. *See* Minn.Stat. §§ 300.27, 302A.425 (1984). Piercing the corporate veil is an exception to be used only under limited circumstances. In order to pierce the corporate veil, a two-prong test must be satisfied:

The first prong of the test focuses on the shareholder's relationship to the corporation. Eight factors we noted as significant in this determination include:

[I]nsufficient capitalization for purposes of corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation at time of transaction in question, siphoning of funds by dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and existence of corporation as merely facade for individual dealings.

The second prong of the test examines the relationship of the plaintiff to the corporation. It requires the showing of "an element of injustice or fundamental unfairness." To satisfy this portion of the test, "proof of strict common law fraud is not required, but, rather, evidence that the corporate entity has been

operated as a constructive fraud or in an unjust manner must be presented."

*White v. Jorgenson*, 322 N.W.2d 607, 608 (Minn.1982) (citations omitted).

In this matter, the trial court's finding addresses only the first prong of the test. The trial court's finding is a bare conclusion and does not discuss the factors required to be considered. *See id.* We do not believe the court's finding is adequate under Minn.R.Civ.P. 52.01.

■ The trial court did not address the second prong of the test. The record in this matter is void of any indication of injustice or fundamental unfairness. The corporation was not operated as a constructive fraud or in an unjust manner. The lease is between respondents and "Dakota Printing Services, Inc." This designation is also indicated on the signature line of the lease. This was a commercial transaction, and respondents knew they were dealing with a corporation when they bought the building. The trial court erred by imposing liability on appellants Lyle Gifferson and Maxine Gifferson. *See White*, 322 N.W.2d at 608; *Victoria Elevator Company v. Meriden Grain Co., Inc.*, 283 N.W.2d 509, 512–13 (Minn.1979).

### DECISION

The terms of the lease were not ambiguous. Respondents did not waive their right to extend the lease by attempting to negotiate a satisfactory lease. The trial court erred by piercing the corporate veil and imposing personal liability on appellants Lyle Gifferson and Maxine Gifferson.

Affirmed in part and reversed in part.