**In re Robert E. SCHUSTER, Debtor.**

**Mark C. HALVERSON, Trustee; Farm Credit Services; and Security State Bank of Wells, Plaintiffs,**

**v.**

**Betty SCHUSTER and North Scooter Inn, Inc., Defendants.**

**Bankruptcy No. 3–87–2800.
No. ADV 3–89–300.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Oct. 18, 1991.

Mark C. Halverson, Trustee, Halverson & Associates, Mankato, Minn., for plaintiffs and plaintiff pro se.

Roger E. Petersen, Rochester, Minn., for defendants.

GREGORY F. KISHEL, Bankruptcy Judge.

This is an adversary proceeding for equitable and declaratory relief. Defendants moved to dismiss it under FED.R.CIV.P. 12(b)(6) and FED.R.BANKR.P. 7012, on the ground that Plaintiff Mark C. Halverson, as trustee of Debtor's bankruptcy estate, lacked standing to request and obtain any of the relief which he had requested, and that this Court lacked jurisdiction over any of the other Plaintiffs' requests for relief. The Court has entered an order denying Defendants' motion as to Halverson, and granting it as to the remaining plaintiffs. This Memorandum sets forth the rationale upon which that order is based.

## I. PROCEDURAL HISTORY.

Debtor filed a voluntary petition for relief under Chapter 7 on September 21, 1987. Plaintiff Mark C. Halverson is the trustee of Debtor's bankruptcy estate.[1] Defendant Betty Schuster is Debtor's wife. Defendant North Scooter Inn, Inc., is a Minnesota corporation which holds the title to certain real estate near Baudette, Minnesota, on which a resort is located. Until February 6, 1986, Debtor and Betty Schuster each owned 50 percent of the outstanding shares of stock in North Scooter Inn, Inc. On that date, Debtor transferred his stockholding to Betty Schuster, who then became the sole shareholder of the corporation.

After Debtor's bankruptcy filing, the Trustee commenced an adversary proceeding against Betty Schuster, ADV 3–88–97, in which he sought to avoid this stock transfer as a fraudulent conveyance pursuant to former MINN.STAT. § 513.28, and to preserve that transfer for the benefit of the estate. In a March 14, 1990 order, this Court denied the Trustee's motion for summary judgment in that adversary proceeding, but limited the fact issues for the trial on one of the "constructive fraud" counts

to the question of whether Debtor was solvent at the time of, or as a result of, the transfer. The trial convened in September, 1990, before Judge Dennis D. O'Brien of this Court. Pursuant to findings which he read onto the record after trial, and via judgment entered on September 19, 1990, Judge O'Brien avoided the stock transfer and held that the 50 percent shareholding was now property of Debtor's bankruptcy estate. Betty Schuster did not appeal that judgment.[2]

During the pendency of the fraudulent conveyance litigation, the Trustee and the other two named Plaintiffs commenced this adversary proceeding. Plaintiff Federal Land Bank of St. Paul ("FLB") and Plaintiff Security State Bank of Wells ("SSB") are creditors which Debtor scheduled in his bankruptcy filing as holding prepetition claims against him. At the time of the stock transfer, they had not foreclosed their mortgages and liens against the collateral security which Debtor had granted them. In their complaint, Plaintiffs request an adjudication which would subject all of the corporate assets of Defendant North Scooter Inn, Inc., and all of Defendant Betty Schuster's personal assets, to the creditors' claims which are allowed in Debtor's bankruptcy case. As Plaintiffs acknowledge, they are seeking either to "pierce the corporate veil" of Defendant North Scooter Inn, Inc., or to establish a "reverse piercing" of it. Plaintiffs assert that 11 U.S.C. § 544(b) grants the Trustee standing to prosecute an "alter ego" action such as this one, on behalf of Debtor's general creditors. In the alternative, the remaining Plaintiffs argue that they have standing as individual creditors to prosecute this adversary proceeding in the Bankruptcy Court.

## II. MERITS OF THIS MOTION.

### A. Introduction.

Defendants have moved for dismissal of all of Plaintiffs' causes of action, presum-

---

**1.** Halverson will be identified as "the Trustee" in the balance of this memorandum.

**2.** Judge O'Brien also overruled the Trustee's objection to Debtor's discharge, which had been joined in a separate adversary proceeding and

which was tried jointly with the fraudulent-conveyance matter. On November 16, 1990, an order granting Debtor a discharge was entered in BKY 3–87–2800.

ably pursuant to FED.R.CIV.P. 12(b)(6), as incorporated by FED.R.BANKR.P. 7012(b).[3] In support, they deny that 11 U.S.C. § 544(b) gives the Trustee standing to bring an alter ego action on behalf of Debtor's pre-petition creditors. For their authority, they rely on the Eighth Circuit's decision in *In re Ozark Restaurant Equipment Co., Inc.*, 816 F.2d 1222 (8th Cir. 1987), *cert. den.*, 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987). They also argue that, in the absence of the Trustee's participation as a party-plaintiff, the remaining named plaintiffs do not have standing under 11 U.S.C. § 544(b) to prosecute this adversary proceeding, and that in any event this Court "lacks jurisdiction" to adjudicate the individual plaintiff-creditors' causes of action against Defendants.

As a threshold matter, it is important to identify Plaintiffs' central theory. They do not seek to pierce the corporate veil of North Scooter Inn, Inc., in the classical sense as invoked by the plaintiff-trustee in *Ozark Restaurant Equipment Co.*—that is, to disregard the existence of the corporation and to make the corporation's individual principals and their personal assets liable for the debts of the corporation. *See, e.g., Minnesota Power v. Armco, Inc.*, 937 F.2d 1363 (8th Cir.1991) (applying Minnesota law, and piercing veil between parent company and subsidiary); *White v. Jorgenson*, 322 N.W.2d 607 (Minn.1982); *West Concord Conservation Club v. Chilson*, 306 N.W.2d 893 (Minn.1981); *GGC Co. v. First Nat'l Bank of St. Paul*, 287 N.W.2d 378 (Minn.1979); *Victoria Elevator Co. of Mpls. v. Meriden Grain Co., Inc.*, 283 N.W.2d 509 (Minn.1979); *Chergosky v. Crosstown Bell, Inc.*, 454 N.W.2d 654 (Minn.App.1990), *rev'd in part on oth-*

er grounds, 463 N.W.2d 522 (Minn.1990); *Universal Lending Corp. v. Wirth Cos., Inc.*, 392 N.W.2d 322 (Minn.App.1986); *Almac, Inc. v. JRH Development, Inc.*, 391 N.W.2d 919 (Minn.App.1986).

█ Rather, they seek a "reverse piercing" of the corporate veil. In a "reverse piercing," the corporate entity is disregarded at the behest of insiders of the corporation, toward the end that rights or benefits inuring to the insiders under contract or statute are impressed onto the assets of the corporation:

> In a reverse pierce ..., the corporate entity [is] set aside so protections that are available to noncorporate entities or individuals would be available to the shareholder [sic] to avoid an injustice.

*Miller & Schroeder, Inc. v. Gearman*, 413 N.W.2d 194, 198 (Minn.App.1987) (Wozniak, J., dissenting). *See also Roepke v. Western Nat'l Mutual Ins. Co.*, 302 N.W.2d 350 (Minn.1981); *Kuennen v. Citizens Security Mut. Ins. Co.*, 330 N.W.2d 886 (Minn. 1983); *Cargill, Inc. v. Hedge*, 375 N.W.2d 477 (Minn.1985); *State Bank in Eden Valley v. Euerle Farms, Inc.*, 441 N.W.2d 121 (Minn.App.1989). In a novel wrinkle on the doctrine applied in these cases, however, Plaintiffs urge that it be applied to disregard the corporate entity in order to make a corporation's assets liable for the debts of one of its individual principals.[4]

█ In either application, of course, the doctrine would function to prevent the triumph of a defective legal form over a substance which, in the view of the court, otherwise merits redress. *Victoria Elevator Co. of Mpls. v. Meriden Grain Co., Inc.*, 283 N.W.2d at 512. To pierce the corporate veil by either process, the proponent must show that: 1) the corporation

---

**3.** FED.R.CIV.P. 12(b)(6) recognizes that a party defendant in a federal lawsuit may join the defense of "failure to state a claim upon which relief may be granted" by motion, as well as by an answer to the original complaint. Defendants did not raise this defense, in so many words, in their answer. In pleading that this Court had "no jurisdiction to enforce any Minnesota laws based on equitable doctrines or on whatever other vague grounds the plaintiffs are seeking relief," though, Defendants seemed to be driving at something equivalent. Regardless of the imprecision in pleading, the legal

tenability of Plaintiffs' requests for relief is properly before the Court.

**4.** Nowhere in any of the pleadings filed to date do the parties address the theory upon which Plaintiffs purport to affix liability in Betty Schuster for Debtor's debts, whether under an alter-ego theory or otherwise. Since the parties have not argued this issue, the Court defers consideration of it to another day, when it is properly and explicitly joined.

was only the "alter ego" or "instrumentality" of the principal(s), i.e., that it was constituted and/or maintained without conformity with governing law and standard principles of accounting and business management; and 2) an element of injustice or fundamental unfairness would be fostered, a recognized statutory goal frustrated, or public policy violated, by giving effect to the corporate form in the proceeding at hand. *Prudential Ins. Co. v. A. Enkema Holding Co.*, 196 Minn. 154, 158, 264 N.W. 576, 578 (1936); *Roepke v. Western Nat'l Mut. Ins. Co.*, 302 N.W.2d at 352-3; *Almac, Inc. v. JRH Development, Inc.*, 391 N.W.2d at 922; *In re Pirsig Farms, Inc.*, 46 B.R. 237, 241 (D.Minn. 1985); *In re Bellanca Aircraft Corp.*, 56 B.R. 339, 399 n. 62 (Bankr.D.Minn.1985).

### B. Outcome, As to Trustee–Plaintiff.

The Trustee is correct; an alter-ego remedy is available to him in this case. He does not prevail on the theory he has espoused, however. Contrary to his argument, the estate does not have this remedy because the Bankruptcy Code makes its interests and powers coincide with those of Debtor's existing creditors, or with a hypothetical lien creditor with an unsatisfied claim. Prior to the avoidance of Debtor's transfer of his shareholding to Betty Schuster, neither alter-ego remedy would have been available to the bankruptcy estate, and the Trustee's complaint would not have been viable. Even in the wake of that adjudication, only the "reverse piercing" remedy is available.

To the extent that a trustee relies on the *statutory* powers granted to the estate under the Bankruptcy Code, his power to invoke an alter-ego remedy could spring from only three sources: 11 U.S.C. §§ 704 and 541; 11 U.S.C. § 544(a); and 11 U.S.C. § 105. *In re Ozark Restaurant Equipment Co.*, 816 F.2d at 1224. Under the binding precedent of *Ozark*, none of these provisions would have availed the Trustee.

As the Eighth Circuit noted, § 704 only empowers and requires the Trustee to "collect and reduce to money the property of the estate," and § 541(a)(1) limits the property of the estate to "legal and equitable interests *of the debtor* in property as of the commencement of the case" (emphasis added), with only a few, nonmaterial exceptions. 816 F.2d at 1224. Under the Arkansas law invoked by the plaintiff-trustee in *Ozark*, the alter-ego remedy ran only to a corporation's creditors, and not to the corporation-debtor; thus, the trustee did not succeed to the remedy, as his debtor/predecessor-in-interest never had the remedy under the applicable law, before its bankruptcy filing. 816 F.2d at 1225–1226.

Under the Trustee's original theory of standing, the same conclusion has to result, for the same reasons. The piercing of the corporate veil works as an exception to the general rule that the assets and liabilities of a corporation are strictly segregated from the assets and liabilities of its shareholders, and that shareholders' exposure for the debts of the corporation is limited to the value of their equity investment. *Groves v. Dakota Printing Services, Inc.*, 371 N.W.2d 59, 62 (Minn.App. 1985). As a result, piercing is to be effected only under limited circumstances. *Id.* In due deference to the many legal rationales for maintaining the corporate form, this close scrutiny should be applied to the threshold question of the proponent's standing to seek a particular form of the remedy, and not just to the merits of the proponent's request.

Under every reported Minnesota case applying the doctrine, the remedy of a "direct piercing" of the corporate veil has run to a corporation's creditors. *See, e.g., Roepke v. Western Nat'l Mut. Ins. Co.*, 302 N.W.2d at 352 (referring to past uses of "direct piercing," and observing that "[t]he practice ... is generally a creditor's remedy ..."). This limitation on availability stems from the basic nature of the remedy: by definition, only an "outsider" with a claim against a sham or defective corporation would be seeking to reach sources of satisfaction which are beyond the protective veil which is otherwise interposed by the legal fiction of separate corporate existence. To the opposite but equal effect, and again by its very nature, "reverse pierc-

ing" is not available to creditors in Minnesota. The person or entity invoking "reverse piercing" must have some sort of substantial property interest in the corporation itself, to furnish the legal nexus through which a court may defensibly attach rights or duties which legally inure to the proponent, onto property of the corporation. This property interest necessarily is the equity interest of a shareholder.

Here, when he filed for bankruptcy, Debtor was not a shareholder of North Scooter Inn, Inc. An equity interest in the corporation, then, did not pass into the estate, and the Trustee had no right to assert rights or powers attendant to the status of shareholder. The Trustee, then, had no power to assert an alter ego remedy derivative of the property interests of the estate.

■ Neither, under *Ozark*, would § 544(a) have empowered the Trustee to invoke an alter-ego remedy. Relying upon *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972) and the legislative history for the Bankruptcy Reform Act of 1978, the Eighth Circuit conclusively rejected the notion that a trustee in a bankruptcy case, acting solely in a fiduciary status on behalf of a debtor's creditors, is empowered under § 544(a) "to assert general causes of action, such as the alter-ego claim, on behalf of the bankrupt estate's creditors." 816 F.2d at 1228.[5] This holding was broad

enough that no further discussion in the context of the present facts is warranted.

Finally, the Eighth Circuit declined to recognize an implied standing to invoke the alter-ego remedy under the "all-writs" provision of § 105(a). 816 F.2d at 1230.

■ The Trustee, however, is no longer situated solely as a fiduciary whose rights and powers are limited to those granted under Chapter 5 of the Bankruptcy Code. The estate is now vested with a 50 percent shareholding in North Scooter Inn, Inc.; the Trustee can now exercise all of the rights and powers of a shareholder in that corporation. The conclusion previously compelled by the first part of the *Ozark* analysis is no longer warranted. To the extent that a "reverse piercing" of the corporate veil of North Scooter Inn, Inc., is available to one of its shareholders under Minnesota law, then, the Trustee may seek such relief for the benefit of the estate.[6]

■ As repeatedly observed in the cases, the remedy of a piercing of the corporate veil is equitable in nature. *Roepke v. Western Nat'l Mut. Ins. Co.*, 302 N.W.2d at 352; *G.G.C. Co. v. First Nat'l Bank of St. Paul*, 287 N.W.2d 378, 384 (1979); *In re Burntside Lodge, Inc.*, 7 F.Supp. 785, 787–8 (D.Minn.1934). Using the remedy, a court may disregard the legal fiction of corporate existence, to facilitate an according of relief or an adjudication of rights which is in line with the general dictates of equity in the proceeding at hand. *See, e.g.,*

---

**5.** Other courts have reached the opposite conclusion. *See, e.g., Koch Refining v. Farmer's Union Central Exchange, Inc.*, 831 F.2d 1339 (7th Cir.1987), *cert. den.*, 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988). The Eighth Circuit's rationale has been criticized in the scholarly literature. *See* Boyce, *Koch Refining and In re Ozark: The Chapter 7 Trustee's Standing to Assert An Alter Ego Cause of Action*, 64 Am. Bankr.L.J. 315 (1990). It is, however, binding appellate precedent which this Court is obligated to apply.

**6.** At first glance, it seems paradoxical that the Trustee accedes to the remedy as a successor to a shareholder, but that he is allowed to use his predecessor's alleged failings and/or wrongdoings to support his invocation of the remedy. There is nothing inherently wrong with this, though. The Trustee is under a fiduciary duty to maximize the estate's recovery, and the re-

turn to the beneficiaries of his trust. *In re Rigden*, 795 F.2d 727, 730 (9th Cir.1986). He is to be an active agent on behalf of the interests of all claimants against the estate. *Imperial Assur. Co. v. Livingston*, 49 F.2d 745, 748 (8th Cir.1931). As a result, he must pursue the remedy at issue here. The fact that the Trustee may exploit a shareholder's standing on a derivative basis, while complaining of that same shareholder's past actions as part of his case on the merits, does not bar the estate from seeking that relief. The Bankruptcy Code recognizes the estate's freedom to pursue its remedies, unfettered by the knowledge and past acts of its debtor-predecessor, in many ways; the "strongarm" provision of 11 U.S.C. § 544(a), which gives the trustee various transfer-avoidance powers under nonbankruptcy law "without regard to any knowledge of the trustee or of any creditor," is only the most salient example.

*Erickson–Hellekson–Vye Co. v. A. Wells Co.*, 217 Minn. 361, 381–2, 15 N.W.2d 162, 173 (1944) (where an individual owns all or practically all of the stock of a corporation, the corporation and the individual may be regarded as one if the equities of the case so merit); *Victoria Elevator Co. of Mpls. v. Meriden Grain Co., Inc.*, 283 N.W.2d at 512 (proponent of piercing must show both irregularities in corporate formation and maintenance, and "an element of injustice or fundamental unfairness" which would result from maintaining the protections of the corporate form); *Universal Lending Corp. v. Wirth Cos., Inc.*, 392 N.W.2d at 326 (ditto); *Almac, Inc. v. JRH Development, Inc.*, 391 N.W.2d at 922 (ditto).

In the last fifteen years, in turn, the Minnesota Supreme Court has substantially broadened the prior scope and availability of "reverse piercing" of the corporate veil. This remedy was first recognized in Minnesota in probate proceedings, to facilitate the equitable goal of giving effect to a testator's wishes. It was applied in the situation where this goal otherwise would have been waylaid by the fact that a specifically-devised asset was nominally titled in the testator's solely-held corporation, while the testator and third parties historically had treated it as being owned by the testator. *In re Warner's Trust*, 263 Minn. 449, 117 N.W.2d 224 (1962). *See also Manufacturers Bldg., Inc. v. Heller*, 306 Minn. 180, 235 N.W.2d 825 (1975); *Central Motors and Supply Co. v. Brown*, 219 Minn. 467, 18 N.W.2d 236 (1945); *In re Koffend's Will*, 218 Minn. 206, 15 N.W.2d 590 (1944).

In *Roepke v. Western Nat'l Mut. Ins. Co.*, the Minnesota court applied the remedy outside the probate area for the first time, to allow the "stacking" of no-fault auto insurance coverage in a case where the decedent was the sole shareholder of a corporation which owned six insured motor vehicles, and where the decedent and the members of his family had always treated and used the vehicles as if they were personally owned by the decedent. 302 N.W.2d at 353. In *Roepke*, the court first recognized that policy bases other than the broad goal of according "equity" could satisfy the second prong of the test for piercing; rather than professing a general equitable goal in extending the remedy, it stated that "the purpose of the no-fault act, ... providing insurance for persons and not vehicles, [was] best fulfilled by piercing the corporate veil" in that case. *Id.*

In its most recent development of the remedy, the Minnesota Supreme Court authorized its use by the individual principals of a family farm corporation,[7] so as to enable them to claim their personal right of homestead exemption under MINN.STAT. §§ 510.01 *et seq.* for farm and residential real estate in which their corporation held the record legal interest as vendee under a contract for deed. *Cargill, Inc. v. Hedge*, 375 N.W.2d at 478–79. The *Hedge* court emphasized the central role of the homestead exemption in Minnesota law, and the long-recognized, overriding public policy in favor of broadly extending its protections. 375 N.W.2d at 479. The court observed that "realistically, ... [the individual corporate proprietors] operated the farm as their own," and used it as the family home; in its view, the "close identity" between the individuals and their corporation merited a judicial override of the technical wording of the homestead statute[8] and a disregarding of the record status of title to the property, so as to attach the individuals' statutory protection to the corporation's property. *Id.* *See also State Bank in Eden Valley v. Euerle Farms, Inc.*, 441 N.W.2d at 124–5 (applying *Cargill, Inc. v. Hedge* to reach same result, on very similar facts).

The Trustee argues that the theory underlying this latest development of the "re-

---

**7.** Under Minnesota statute, a "family farm corporation" is a specifically-defined entity, MINN. STAT. § 500.24 subd. 2, which is exempted from various statutory regulations otherwise imposed on corporate owners of agricultural land, e.g., MINN.STAT. § 500.24 subd. 3 *et seq.*

**8.** MINN.STAT. § 510.01 gives exemption protection to "[t]he house owned and occupied by a debtor as the debtor's dwelling place, together with the land upon which it is situated ..." A corporation, being an artificial person not needing a dwelling, is not entitled to claim the protection of this statute in its own right. *Cargill, Inc. v. Hedge*, 375 N.W.2d at 478.

verse piercing" remedy is broad enough that it supports his own invocation of it. He does not completely acknowledge that the practical effect would be diametrically opposite from that reached in *Hedge* and *Euerle Farms;* a reverse piercing here would result in an invasion of the corporate form and the attachment of the corporation's assets for the benefit of the individual's creditors. This, of course, would abrogate the strict separation of assets and liabilities which has been one of the immemorial attributes of the corporate form. The Trustee is correct, however; the piercing doctrine is neither innately pro-debtor nor pro-creditor, and the consequence of a loss of corporate assets to a shareholder's creditors, standing alone, does not mean that the remedy should not be applied. The real question is whether the dictates of equity, any recognized public policy, or any express statutory goal would be served by disregarding the corporate form in favor of a trustee in bankruptcy situated like the one here. There is at least one major principle which justifies doing so.

 Bankruptcy is a judicial forum for the according of two different classes of remedies after a debtor's financial failure: the debtor's equitable remedy of discharge, where granted pursuant to the Bankruptcy Code; and the creditor's remedy of receiving a *pro rata* share of the value which the Code dictates must be available to creditors after the debtor's "fresh start" is protected through the allowance of such exemptions as are available under statute. The structure of the Code evidences Congress's intent that the bankruptcy court is to accord these remedies by maintaining them in a state of relative balance. The debtor is obligated to assist in the administration of the estate by filing various lists, statements, and schedules, 11 U.S.C. § 521, and by submitting to examination at a meeting of creditors, 11 U.S.C. § 343. *See also In re Mathis Ins. Agency, Inc.,* 50 B.R. 482, 487 (Bankr.W.D.Ark.1985); *In re Martin,* 30 B.R. 24, 26 (Bankr.E.D.N.C.1983). A

Chapter 7 debtor may be denied discharge for various pre- or post-petition acts which are inherently prejudicial to the administration of the estate, 11 U.S.C. §§ 727(a)(2)—(7). Absent convincing proof of such seriously inequitable conduct, an individual Chapter 7 debtor is to receive a discharge in due course.[9] The price which the debtor pays for discharge is the loss of nonexempt assets, or at least the loss of their value. The debtor has the duty to cooperate with the trustee in the orderly surrender of nonexempt assets for administration. The Code and the caselaw recognize that debtors who seek the powerful remedy of discharge should not be permitted to fraudulently or unfairly manipulate the form and ownership of valuable assets which otherwise would be available for the satisfaction of creditors' claims, so as to shelter them from administration by the trustee. *See, e.g., In re Armstrong,* 931 F.2d 1233 (8th Cir.1991); *In re Johnson,* 880 F.2d 78 (8th Cir.1989), *on remand,* 124 B.R. 290 (Bankr. D.Minn.1991); *In re Elholm,* 80 B.R. 964 (Bankr.D.Minn.1987).

Whether any of the constituencies affected by its operation appreciate the fact or not, the system of bankruptcy administration and adjudication has assumed a significant role in this nation's economy. There is, then, a strong public interest in preserving the integrity of bankruptcy remedies. The perception and actuality of this integrity can be preserved only as long as the courts maintain the statutory balance between debtor's and creditor's remedies. This recognized public interest, intertwined as it is with the basic dictates of equity, equates to the recognized policy goal which must be present before a court may apply the "reverse piercing" doctrine under Minnesota law.

The Trustee alleges that there was a substantial identity between Debtor's conduct of his personal business affairs, and his management and operation of the family corporation. He alleges that Debtor and Betty Schuster failed to observe corporate

---

**9.** 11 U.S.C. § 727(a) provides that "[t]he debtor *shall* receive a discharge, unless" he is not an individual, unless he has committed one of the proscribed acts specified in §§ 727(a)(2)–(7),

unless he has received a discharge in a bankruptcy case commenced within six years of his current filing, or unless he has waived discharge. (Emphasis added).

formalities in the maintenance and governance of North Scooter Inn, Inc., and that they used it as an "entity of fraud to shelter assets from creditors,"—the latter, presumably, a reference to Debtor's individual creditors. At this stage in this litigation, of course, no proof of these serious allegations has been forthcoming; findings as to these issues are not warranted or even possible. If, however, the Trustee's allegations are true, and if the "reverse piercing" doctrine is not applied, the balance of remedies between Debtor and his creditors would be seriously upset. Debtor would have had the manifest benefit of discharge from debt—but, in the process, the bankruptcy system would have permitted him to shelter a past transfer of personal resources into an artificial entity which was not even properly constituted or maintained under governing law. As the Trustee argues, this would allow a legal fiction—the facade of the family corporation—to triumph over substance—Debtor's accrual and retention of nonexempt wealth, in the face of his insolvency and discharge from debt. Though no Minnesota appellate court has applied the doctrine of "reverse piercing" under the facts and the alignment of parties presented here, such an application is clearly within the broad scope of the holding in *Cargill, Inc. v. Hedge.* Accord, *BBCA, Inc. v. United States,* 733 F.Supp. 73 (D.Minn.1989) (concluding that lack of case authority from Minnesota state courts on applicability of alter ego doctrine to specific fact pattern at hand did not prohibit such an application). Plaintiff, then, has standing to prosecute this adversary proceeding, and Defendants' motion to dismiss must be denied as to him.[10]

### C. Outcome, As to Plaintiffs Who are Private Creditors.

 This, of course, disposes of Defendants' motion only as it pertains to the Trustee's request for relief. In moving to dismiss the two private creditor-plaintiffs' requests for relief on jurisdictional grounds, Defendants presupposed a ruling in their favor on the issue of the Trustee's standing; they did not address the propriety of a private creditor's maintenance of an "alter-ego" action in a bankruptcy case when a trustee already has one pending. In the interests of economy for both the Court and the parties, however, the issue is appropriately confronted now—and it is rightly resolved in favor of dismissal.

In a Chapter 7 case, the trustee—*and only the trustee*—is charged to perform such actions as "collect[ing] and reduc[ing] to money the property of the estate for which such trustee serves, and clos[ing] such estate as expeditiously as is compatible with the best interests of parties in interest," and "investigat[ing] the financial affairs of the debtor." 11 U.S.C. §§ 704(1) and (4). The trustee alone has standing to avoid a debtor's transfers of property which have diminished the bankruptcy estate. *Saline State Bank v. Mahloch,* 834 F.2d 690, 694–5 (8th Cir.1987); *Nebraska State Bank v. Jones,* 846 F.2d 477, 478 (8th Cir.1988); *In re Strom,* 97 B.R. 532, 539 (Bankr.D.Minn.1989), aff'd, 921 F.2d 836 (8th Cir.1991); *In re Grell,* 83 B.R. 652, 657 (Bankr.D.Minn.1988) (all holding that only trustee has standing to avoid transfers under 11 U.S.C. § 544). The relief requested in this adversary proceeding is an adjudication which would make all of the assets of both Defendants available for the satisfaction of all claims allowed in Debtor's bankruptcy case. This relief is directly analogous to the avoidance of a transfer under § 544, and § 704 vests the trustee with sole authority to accomplish it—at least while a bankruptcy estate is in administration.

---

**10.** Of course, this ruling only addresses the question of the right to go forward on this litigation, and does not address the merits at all. If this matter proceeds to trial, the Trustee will still have to prove up the first prong of the state-law test—substantial irregularities in the formation and/or maintenance of the corporation, or other objective manifestations of the *de facto* identity between the business and financial affairs of the Schusters and of the corporation. As the court in *Cargill, Inc. v. Hedge* noted, "a reverse pierce should be permitted in only the most carefully limited circumstances." 375 N.W.2d at 480. The fact that the Trustee is a fiduciary acting on behalf of creditors cannot alter or lighten his burden to establish those circumstances.

Since the trustee alone has standing to prosecute this proceeding, and is now making use of that standing, there is no reason why the named Plaintiffs who are private creditors can or should be heard to request the same relief. Defendants are entitled to a dismissal of the complaint, as to those parties.[11]

---

**11.** This result should come as no surprise to any of the plaintiffs, and it certainly does not work a hardship on anyone in the wake of the ruling as to the Trustee's standing. The Trustee most likely pleaded in the private-creditor plaintiffs as a prophylactic measure, recognizing the breadth of the *Ozark* rationale and the weakness of his own assertion of standing on its original basis. Had the original circumstances continued, the Court would have had to address Defendants' argument that the private creditors had no forum under the federal courts' bankruptcy jurisdiction. As it is, this thorny question is left unanswered.