81 F.3d 167
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
ESTATE OF Sammy G. DAILY, Plaintiff,
and
Mary Lou Woo, Trustee of the Estate of Sammy G. Daily,
Trustee-Appellant,
v.
LILIPUNA ASSOCIATES, a Hawaii limited partnership; Lilipuna
Development Corporation; Title Guaranty Escrow
Service, a Hawaiian corporation;
Michael Daily; Terry Daily
Wilcox, Defendants-Appellees.
 No. 95-16370.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 7, 1995.
Decided April 4, 1996.
 
 Before: HUG, Chief Judge; THOMPSON and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 We must decide whether Hawaii state courts would allow the trustee of a bankrupt debtor's estate to bring a "reverse alter ego" or "reverse veil piercing" claim[1] against a corporation in a case where (1) the debtor was not a stockholder of that corporation when he filed for bankruptcy and (2) the actual stockholders may not be made parties to the suit because of the passage of the statute of limitations. Because we conclude that Hawaii state courts would not recognize such a claim, we affirm the district court's dismissal of the trustee's complaint.
 
 
 3
 * The original complaint in this case was filed by the Chapter 7 bankruptcy trustee of debtor Sammy G. Daily's estate in January 1989. That complaint sought to recover the proceeds of the 1989 sale of certain real property which had been sold by codefendant Lilipuna Associates ("Lilipuna"), a Hawaii limited partnership. Lilipuna placed the proceeds into an escrow account pending distribution to codefendants Lilipuna Development Corp. ("LDC") and Lilipuna Venture, Inc. ("LVI"), both partners of Lilipuna.
 
 
 4
 The complaint alleged that Sammy Daily used LVI and LDC as shell corporations fraudulently to place certain of his assets beyond the reach of his creditors. Even though Daily owned no stock in either corporation at the time the complaint was filed, the trustee alleged that the corporations were Daily's "alter egos," and that their assets, including in particular their right to the sale proceeds, were property of Daily's bankruptcy estate.
 
 
 5
 In March 1993, defendant LDC unilaterally filed a motion seeking an order of dismissal or for summary judgment. LDC argued that the trustee lacked standing to prosecute an alter ego claim and had failed to state a claim under Hawaii law. Pursuant to 28 U.S.C. § 157(c)(1), the district court designated Bankruptcy Judge Lloyd King to hear the motion and to submit a report to the court.
 
 
 6
 Judge King's report recommended that LDC's motion to dismiss be granted. His recommendation was based in part on the fact that Hawaii courts have not recognized reverse alter ego causes of action, and in part on the fact that the complaint failed to name the shareholders of LDC and LVI, including primarily Michael C. Daily and Terri Daily Wilcox (Sammy Daily's children) as defendants. Judge King reasoned that the shareholders' rights would be put at risk if LDC and LVI were charged with liability for Daily's debts, and that they should therefore be parties to any suit affecting their stock. On January 3, 1994, the district court adopted Judge King's report, granted LDC's motion to dismiss, and allowed the trustee to file an amended complaint.
 
 
 7
 The trustee's amended complaint alleged that in late 1982 or early 1983, two years before Sammy Daily declared bankruptcy, he and his wife Margaret transferred all or substantially all of the corporate stock of LVI and LDC to Michael and Terri, for less than the reasonably equivalent value of the stock, in an attempt to defraud Sammy Daily's creditors.[2] The complaint did not seek to avoid those stock transfers; instead, it sought a declaration that the two corporations were Daily's alter egos. The complaint also sought an order turning over the escrowed proceeds to the trustee.
 
 
 8
 On April 4, 1994, Michael and Terri filed a motion to dismiss or for summary judgment, arguing primarily that the complaint against them was barred by Hawaii's statute of limitations.[3] The district court again referred the case to Judge King for findings.
 
 
 9
 Judge King's second report also recommended that the court grant the motions to dismiss. First, he concluded that Hawaii's statute of limitations barred the trustee from adding Michael and Terri as defendants to the amended complaint. Second, he again concluded that the trustee's attempt to state a reverse alter ego claim must fail, because no such claim had been or was expected to be recognized in Hawaii state courts. In addition, even if such a claim might be recognized in general terms, he concluded that it would not be recognized in this case, because Sammy Daily owned no shares of LVI or LDC, and Michael and Terri, who effectively owned all the shares of LVI and LDC, could not be named as parties because of the statute of limitations.
 
 
 10
 On February 21, 1995, Judge Ezra adopted Judge King's report and recommendations. The district court also concluded that, in light of Williams v. California 1st Bank, 859 F.2d 664 (9th Cir.1988), the trustee had no standing to bring a reverse alter ego claim. The court thus dismissed with prejudice the trustee's amended complaint against LDC, Michael and Terri, and it ordered the dissolution of a previously-entered injunction which had prohibited distribution of the proceeds.[4] Finally, after the trustee failed to proceed against the remaining defendants within the time frame mandated by the court, the court entered a final order dismissing the amended complaint as to all defendants. The trustee timely appealed.[5]
 
 II
 
 11
 The Hawaii Supreme Court has not spoken on the issue of reverse veil piercing; we therefore look to "other state court decisions, well-reasoned decisions from other jurisdictions, and any other available authority to determine the applicable state law." Home Indem. Co. v. Lane Powell Moss and Miller, 43 F.3d 1322, 1326 (9th Cir.1995) (quotations, citation omitted). After reviewing those authorities, we agree with Judge Ezra that Hawaii state courts would probably not allow the trustee to bring a reverse veil piercing claim on the facts of this case.
 
 
 12
 In our view, the single most important fact is that Sammy Daily owned no stock in LVI and LDC at the time he declared bankruptcy. Existing cases strongly suggest that stock ownership is a necessary predicate to any veil piercing claim in Hawaii. For example, see Evanston Ins. Co. v. Luko, 783 P.2d 293 (Haw.App.1989). In Luko, a plaintiff attempted to pierce the corporate veil in order to impose liability on two individuals who served as officers and directors of a corporation. In rejecting the claim, the court stated that:
 
 
 13
 We note that under the doctrine known as "piercing the corporate veil," the separate corporate entity is disregarded and "a corporation and the individual or individuals owning all its stocks and assets will be treated as identical." 18 Am.Jur.2d Corporations § 43 at 841-42 (1985) (emphasis added). Although the evidence indicates that Roger and Eileen were officers and directors of Associates, the record does not contain any evidence that they were shareholders of Associates.
 
 
 14
 Id. at 297. It is worth noting that the emphasis on the stock ownership language was the court's.
 
 
 15
 Because Luko refused, on the grounds of a lack of stock ownership, to pierce a corporate veil to impose liability even on corporate directors and officers (who presumably have significant control over the corporation), it seems that the same rationale would prohibit any reverse veil piercing claim brought by an individual who was not a stockholder of the corporation but who was alleged to "control" the corporation.
 
 
 16
 This conclusion is supported by dicta in other cases. For example, see Cahill v. Hawaiian Paradise Park Corp., 543 P.2d 1356, 1360 (Haw.1975) ("There is nothing to suggest that this is a case in which the corporate entity should be disregarded because of circumstances that reveal that the shareholders treated and regarded the corporation as their alter ego.") (emphasis added); Hilo Crane Serv., Inc. v. Ho, 693 P.2d 412, 422 (Haw.App.1984) ("mere control or domination of a corporation is not proscribed by law and is in itself insufficient to justify piercing the corporate veil....") (internal quotations, citations omitted), cert. denied, 744 P.2d 781 (Haw.1985); see also Kahili, Inc. v. Yamamoto, 506 P.2d 9 (Haw.1973) (allowing a corporate veil to be pierced to impose liability on the sole shareholders of a closely held corporation).[6]
 
 
 17
 The trustee attempts to counter the district court's prediction on what Hawaii courts would do in the future by arguing that the "prevailing trend" is for bankruptcy courts to recognize reverse alter ego claims. However, in the majority of the cases cited by the trustee, the debtor owned shares in the targeted corporation. See, e.g., In re Elkay Industries, Inc., 167 B.R. 404, 410 (D.S.C.1994) ("In essence, the trustee argues that the debtor and its wholly owned corporate subsidiary were alter egos....") (emphasis added); In re Mass, 178 B.R. 626, 629 (M.D.Pa.1995) ("The Trustee, representing the estate, is taking the position of the individual debtors/shareholders ... requesting that the corporate entity be disregarded and the account be brought into the estate to satisfy the debts of the individual debtors.") (emphasis added); In re Richels, 163 B.R. 760 (Bankr.E.D.Va.1994) (trustee allowed to proceed on reverse veil piercing theory where debtor was director, president and "dominant and controlling shareholder" of defendant corporation); and In re Schuster, 132 B.R. 604 (Bankr.D.Minn.1991).[7] The weight of authority thus undermines the trustee's argument.[8]
 
 
 18
 Finally, we agree with the district court's prediction that Hawaii courts would share the concerns outlined in Cascade Energy & Metals Corp. v. Banks, 896 F.2d 1557, 1577 (10th Cir.), cert. denied sub. nom. Weston v. Banks, 498 U.S. 849 (1990). In Cascade, the court refused to allow a reverse alter ego claim where Utah courts had not previously approved the cause of action. In doing so, the court expressed concern that the claim might prejudice the rights of "other non-culpable" shareholders. Id. The trustee asserts that Cascade is inapplicable, because Michael and Terri are allegedly culpable shareholders. This allegation notwithstanding, we agree with the district court that the fact that Michael and Terri cannot be made parties to this action and cannot protect their interests would make Hawaii courts less likely to allow a reverse alter ego claim here.
 
 
 19
 In sum, we agree with Judge Ezra that Hawaii state courts would not recognize a reverse alter ego claim on the facts of this case. Accordingly, the district court did not err in dismissing the trustee's claim.[9]
 
 III
 
 20
 For these reasons, the district court's dismissal of the trustee's complaint is AFFIRMED, and this court's previous stay of the district court's order dissolving the preliminary injunction prohibiting distribution of the proceeds is hereby LIFTED.
 
 
 21
 AFFIRMED; STAY LIFTED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 A traditional alter ego claim seeks to pierce the corporate veil and impose liability for a corporate debt upon an individual who has used the corporation merely as an instrumentality to conduct personal business. By contrast, a reverse alter ego or reverse veil piercing claim generally seeks to make the corporation liable for the debts of the owner of the corporation
 
 
 [2]
 Michael and Terri apparently contend that Sammy and Margaret Daily never owned the stock. However, because the issue arose in the context of a motion to dismiss, the district court properly assumed the truth of the allegations in the trustee's complaint
 
 
 [3]
 On this same day, LDC also filed a motion to dismiss, even though it had not been named as a defendant in the amended complaint and the court had granted its prior motion to dismiss
 
 
 [4]
 This court subsequently entered an order staying enforcement of the February 21, 1995 order pending the outcome of this appeal
 
 
 [5]
 The district court's jurisdiction was based on 28 U.S.C. §§ 157(c)(1) and 1334(b); our jurisdiction is based on 28 U.S.C. § 1291. We review de novo a dismissal for failure to state a claim. Stone v. Travelers Corp., 58 F.3d 434, 436-37 (9th Cir.1995)
 
 
 [6]
 See also 1 Fletcher Cyclopedia of Corporations § 41.70 (1990 & Supp.1994) ("Where a creditor proves that controlling shareholders organized or used the corporation to deceive or defraud personal creditors, the separate existence shall be disregarded and the corporation and the shareholders will be treated as one and the same.") (emphasis added)
 
 
 [7]
 The analysis in Schuster is particularly instructive. In that case, a debtor had transferred his 50% stock ownership in a corporation to his wife. Before seeking to proceed on a reverse alter ego theory against the assets of the corporation, the bankruptcy trustee first successfully sought to recover, on the grounds of fraudulent transfer, the stock given to the debtor's wife. The court explained that it was the trustee's return of the stock to the debtor's estate which provided the necessary prerequisite for the trustee to proceed on a reverse veil piercing theory. Schuster, 132 B.R. at 608-09. As noted above, the trustee in the instant case did not seek to avoid the alleged transfers of stock from Sammy Daily to his children
 
 
 [8]
 To the extent that Towe Antique Ford Foundation v. I.R.S., 999 F.2d 1387 (9th Cir.1993) and In re Towe, 173 B.R. 197 (Bankr.D.Mont.1994), stay granted by Martinson v. Towe, 74 A.F.T.R.2d 94-7319 (Bankr.D.Mont.1994), are to the contrary, they are distinguishable. Each applies Montana law, which differs from Hawaii law in that stock ownership is apparently not a necessary predicate to corporate veil piercing
 
 
 [9]
 Because of our conclusion that the trustee had no alter ego claim to assert, we need not and do not address the issue of whether the trustee would have had standing to bring such a claim