**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

---

No. 96-1864

---

John R. Stoebner, Trustee,   *
                            *
        Appellee,       *
                            * Appeal from the United
States
    v.               * District Court for the
                            * District of Minnesota.
Thomas A. Lingenfelter, doing *
business as Heritage Collectors' *
Society,                   *
                            *
        Appellant.       *

---

Submitted: February 12, 1997

Filed: May 29, 1997

---

Before FAGG, HEANEY, and JOHN R. GIBSON, Circuit Judges.

---

HEANEY, Circuit Judge.

Thomas A. Lingenfelter appeals from an order of the district court denying several motions for relief from a jury determination that Lingenfelter received property from an insolvent company, T.G. Morgan, Inc., in violation of 11 U.S.C. §§ 544, 548. Lingenfelter also challenges the district court's decision to strike a corporate veil-piercing defense offered by Lingenfelter. We affirm.

## I.

Michael W. Blodgett was president and partial owner of T.G. Morgan, a corporation that bought and sold rare coins. T.G. Morgan shared an office in Wayzata, Minnesota with several other companies owned by Blodgett and his family. Included among the companies in the office was Keys to History, Inc., owned and operated by Blodgett and his family for the purchase and sale of historical documents.

Although Keys to History and T.G. Morgan had common shareholders and officers, the same employees, and the same business location, the two corporations maintained separate records and were treated separately for accounting purposes. In addition, Keys to History had its own suite address, stationery, marketing materials, phone number, bank account, and ledger.

Lingenfelter collects and sells historical documents through his business in Lahaska, Pennsylvania. He met Blodgett at a trade conference in 1989, after which Blodgett contacted him about the possibility of Lingenfelter supplying historic documents to Keys to History. He subsequently supplied the documents, some of which were paid for by T.G. Morgan. All documents were treated in the accounting records of T.G. Morgan and Keys to History as being owned by Keys to History. T.G. Morgan's books showed a record of a note receivable due from Keys to History for each document T.G. Morgan purchased and transferred to Keys to History, although no actual notes receivable were ever created.

Lingenfelter continued to supply documents to Blodgett, T.G. Morgan, and Keys to History through the summer of 1991 when the Federal Trade Commission raided T.G. Morgan's offices. T.G. Morgan ceased operating in late 1991, while Keys to History continued doing business. T.G. Morgan entered bankruptcy proceedings in January 1992 with the filing of an involuntary Chapter 11 bankruptcy petition. In May

1992, John R. Stoebner became T.G. Morgan's trustee in bankruptcy following the conversion of the case to a Chapter 7 proceeding.

In May 1994, Stoebner initiated this action on behalf of T.G. Morgan's creditors, asserting that payments totaling $153,025 made by T.G. Morgan to Lingenfelter in 1990 and 1991 were fraudulent under 11 U.S.C. §§ 544, 548.[1]  Stoebner claimed that the documents purchased by T.G. Morgan were delivered to Keys to History and that T.G. Morgan, insolvent at the time, received no value for its payments.  Lingenfelter asserted a "good faith for value" defense, arguing that he dealt with Blodgett and his businesses without knowledge that Blodgett was acting

---

[1]Section 544 grants a trustee of a debtor in bankruptcy the same rights and powers to avoid transfers of property by the debtor afforded to a creditor of the debtor under various conditions.  See 11 U.S.C. § 544.  Section 548, in pertinent part, provides that:

**(a)** [a] trustee may avoid any transfer of an interest of the debtor in property . . . that was made or incurred on or within one year before the date of the filing of [a] petition [for bankruptcy protection], if the debtor voluntarily or involuntarily-

**(1)** made such transfer . . . with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

**(2)(A)** received less than a reasonably equivalent value in exchange for such transfer or obligation; and

**(B)(I)** was insolvent on the date that such transfer was made . . . .

11 U.S.C. § 548.

4

to the detriment of T.G. Morgan's creditors and that T.G. Morgan received value for the payments whether the documents were received by it or by Keys to History or by Blodgett.  By special verdict

form, the jury found that the payments had been made to Lingenfelter; that T.G. Morgan had creditors before and after they were made; and that they were made with the intent to delay, hinder, or defraud T.G. Morgan's creditors. The jury also found that T.G. Morgan received no value for its payments, that the company was insolvent and had unreasonably small capital upon which to operate, and that it intended to incur debts beyond what it could pay. Finally, the jury concluded that Lingenfelter had not taken the payments from T.G. Morgan in good faith.

After trial, Lingenfelter moved for relief from the verdict, including a motion for judgment as a matter of law ("JAML"), claiming that the evidence demonstrated that T.G. Morgan received value and that he was entitled to the "good faith for value" defense. Lingenfelter also moved for a new trial, asserting that the district court erred in striking his proposed corporate veil-piercing defense through which he intended to show that T.G. Morgan received value for its payments by receiving the documents he delivered to Blodgett or to Keys to History. Stoebner moved for an award of prejudgment interest. The district court denied all of Lingenfelter's motions[2] and granted Stoebner's motion. Lingenfelter appeals.

## II.

---

[2]In addition to his motions for judgment as a matter of law and for a new trial, Lingenfelter moved for a stay of execution of the judgment. With respect to that motion and Lingenfelter's other challenges to the proceedings, we adopt the opinion of the district court in Stoebner v. Lingenfelter, No. 3-94-1009 (D. Minn. Feb. 15, 1995) (denying stay of execution of judgment, denying judgment as a matter of law, denying motion for a new trial, and granting prejudgment interest).

**A. JAML**

We review the district court's denial of a motion for JAML de novo, applying the same standard used by the district court.  <u>Kaplon v. Howmedica, Inc.</u>, 83 F.3d 263,

266 (8th Cir. 1996). We resolve all conflicts in the evidence in favor of the nonmoving party, giving that party the benefit of all reasonable inferences and assuming as true all facts supporting the nonmoving party's case. Id. at 266-67. We affirm a denial of a motion for JAML if a reasonable jury could differ as to the conclusions to be drawn from the evidence. Triton Corp. v. Hardrives, Inc., 85 F.3d 343, 345 (8th Cir. 1996). We do not weigh or evaluate the evidence nor do we consider the credibility of the witnesses. Id.

After careful review of the record, we believe that the jury's findings on the special verdict are fully supported by the evidence. For each of the jury findings, Stoebner presented evidence to permit a jury to find in his favor.[3] Moreover, Lingenfelter failed to carry the substantial burden necessary to warrant JAML on his "good faith for value" defense. Lingenfelter presented little more than his personal background to demonstrate that he acted in good faith. This scant offer of proof barely challenged Stoebner's voluminous evidence that T.G. Blodgett received no value for the payments it made to Lingenfelter. Thus, we affirm the

---

[3]Stoebner presented numerous witnesses and exhibits over the course of a ten-day trial. Stoebner's evidence addressed each of the findings to be made by the jury, including the testimony of T.G. Morgan's financial representatives and creditors, canceled checks, Lingenfelter's business records, and shipping labels. We are confident that the jury relied on more than mere speculation in making its determinations for which Stoebner had the burden of proof. See City of Omaha Employees Betterment Ass'n v. Omaha, 883 F.2d 650, 651-52 (8th Cir. 1989) (a court may not deny a motion for JAML where the verdict is a result of nothing more than speculation by the jury).

district court's denial of Lingenfelter's motion for JAML.

## B. Corporate Veil-Piercing Defense

Lingenfelter moved for a new trial, asserting that the district court erred in striking his proposed corporate veil-piercing defense through which he intended to show that T.G. Morgan received value for its payments to him. We review the district court's conclusions of law de novo. Friends of the Boundary Waters Wilderness v. Thomas, 53 F.3d 881, 885 (8th Cir. 1995). Whether to pierce a corporate veil is a legal determination that, in our circuit, is governed by state law. See Minnesota Power v. Armco., Inc., 937 F.2d 1363, 1367 (8th Cir. 1991). Under Minnesota law, deciding whether to allow a corporate veil to be pierced requires a court to 1) analyze whether the corporation functioned as the mere instrumentality of the principals a party is attempting to reach by piercing the corporate veil, and 2) determine whether injustice or fundamental unfairness would occur if the corporate veil were left intact. Id. (citing Victoria Elevator Co. v. Meriden Grain Co., 283 N.W.2d 509, 512 (Minn. 1979)). Whereas the first prong involves questions of fact, National Bond Fin. Co. v. General Motors Corp., 341 F.2d 1022, 1023 (8th Cir. 1965), the second prong raises equitable considerations, Roepke v. Western Nat'l Mutual Ins. Co., 302 N.W.2d 350, 352 (Minn. 1981); Victoria Elevator, 283 N.W.2d at 512 (corporate veil properly pierced where, after making the necessary factual determinations, leaving the corporate veil intact would be inequitable). The district court did not address whether Lingenfelter's requested defense had factual support, determining that there were no equitable considerations to support a veil-piercing defense in this case. We agree.

10

Lingenfelter argues that T.G. Morgan's corporate veil should be pierced to show that Blodgett and Keys to History were actually alter egos of T.G. Morgan, and, as such, T.G. Morgan received value when it purchased historical documents and delivered them to either Blodgett or Keys to History.  Traditionally, piercing a corporate veil is conducted to show that a principal hiding behind a fictitious corporation is liable to creditors of the corporation.  What Lingenfelter requests, however, in effect constitutes a "reverse piercing" of the corporate veil in that it would

show that the principal behind the purportedly fictitious corporation received value from him.  Lingenfelter's approach is inconsistent with the proper application of the doctrine.

Minnesota courts do not apply the doctrine where nonprincipals, such as T.G. Morgan's innocent creditors, will be harmed.[4]  See In re:  Bellanca Aircraft Corp., 56 B.R. 339, 399 (Bankr. D. Minn. 1985), aff'd in part and remanded in part, 850 F.2d 1275 (8th Cir. 1988); Cargill, Inc. v. Hedge, 375 N.W.2d 477, 479 (Minn. 1985). Further, even if the doctrine were applicable to this case, Lingenfelter was unable to convince the jury that he took payments from T.G. Morgan in good faith.  Thus it was not necessary for the jury to decide whether one of the corporations was an alter ego of another principal. In the absence of a finding of good faith on Lingenfelter's part, leaving the corporate veil intact is not fundamentally unfair.

## III.

Based on the foregoing, we affirm the district court's order in all respects.

A true copy.

Attest.

---

[4]Minnesota has recognized the "reverse pierce" of the corporate veil under very limited circumstances, namely when "no shareholder or creditor would be adversely affected." Roepke v. Western Nat'l Mutual Ins. Co., 302 N.W.2d 350, 352-53 (Minn. 1981).

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.