# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

08-6004MN

_____

|  |  |  |
|---|---|---|
| In re: | * | |
| | * | |
| John R. Burwell, | * | |
| | * | |
| Debtor | * | |
| | * | |
| | * | Appeal from the United States |
| Randall Seaver, Trustee, | * | Bankruptcy Court for the |
| | * | District of Minnesota |
| Plaintiff-Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Burwell Family Limited | * | |
| Partnership and RHFP, LLC, | * | |
| | * | |
| Defendants-Appellants. | * | |
| | * | |

_____

Submitted: August 5, 2008
Filed: August 7, 2008

_____

Before FEDERMAN, MAHONEY, and VENTERS, Bankruptcy Judges.

_____

MAHONEY, Bankruptcy Judge.

Two partnerships appeal the bankruptcy court's entry of a default judgment which determined that they were the alter ego of the Debtor and which ordered the assets of the partnerships to be included in the bankruptcy estate. We affirm.[1]

## BACKGROUND

John R. Burwell filed a Chapter 7 petition on October 4, 2006, and on January 12, 2007, the Trustee filed a complaint against Burwell, Burwell Family Limited Partnership ("BFLP"), Albert Kelly, Jr., and RHFP, LLC. On June 5, 2007, the Trustee filed an amended complaint. Counts I, II, and III are most relevant to this appeal because they related to the Trustee's contention that the two partnerships should be treated as the alter egos of Burwell himself. Count I sought a declaratory judgment that Burwell utilized the partnerships to defraud his creditors, and that honoring the corporate entities of the partnerships would "result in injustice to Debtor's creditors and would be fundamentally unfair." Count II sought relief pursuant to 11 U.S.C. § 105 enjoining the defendants from interfering with assets of the estate, including those owned by the partnerships. Count III sought turnover of the assets of the partnerships, based on their being property of the Debtor's estate. Burwell answered the complaint, and Kelly filed a motion to dismiss. The partnerships did not respond to the Complaint.

On August 8, 2007, the Trustee filed a motion for default judgment against the two partnerships. The Notice of Hearing and Motion for Default Judgment stated that if a responsive pleading was not filed by August 17, the court may grant the motion without a hearing. Neither partnership defendant responded to the motion. Default judgment was entered on August 22.

---

[1]The Honorable Nancy C. Dreher, who was appointed Chief Judge of the United States Bankruptcy Court for the District of Minnesota on September 25, 2007, after the judgment referred to herein was entered.

Burwell, a non-lawyer purporting to act on behalf of the two partnerships, timely appealed the default judgment. An administrative panel of the BAP refused to permit him to prosecute the appeal without counsel appearing on behalf of the partnerships. Thereafter, an attorney entered an appearance. The partnerships have not requested a stay pending appeal, and the Trustee is apparently liquidating some partnership property. On December 17, 2007, the Trustee dismissed the complaint against Burwell and Kelly, making the default judgment a final order for purposes of appeal.

On May 2, 2008, the B.A.P. sent a letter regarding oral argument, giving the parties until May 12 to respond. The Trustee waived oral argument; the appellants did not respond. The matter has, therefore, been submitted on the record and briefs, without oral argument.

THE COMPLAINT

According to the language of the Complaint, which was incorporated into the trial court's Findings of Fact, Conclusions of Law and Order for Judgment, Burwell formed BFLP several years prior to filing the bankruptcy petition and then transferred his interest in the partnership to Kelly. Burwell testified that Kelly is the sole owner of RHFP, LLC.

After a state court judgment was entered against him and collection efforts had begun, Burwell used both the BFLP and RHFP bank accounts to manage his personal financial affairs and to protect his assets from creditors.

About the same time that he sold his interest in BFLP to Kelly, in May 2003, Burwell sold real estate in Stillwater, Minnesota, to Katherine Norton. As part of that transaction, Burwell retained an option to purchase five acres of that land for $1.00. He commenced an action against her on August 26, 2005, seeking to enforce the

3

option. During the pendency of that action, he purportedly transferred the five-acre option to BFLP in exchange for tobacco rights which BFLP owned. Burwell sold the tobacco rights in January 2006 and deposited the $64,600 in proceeds into RHFP's bank account. He withdrew the tobacco proceeds from the RHFP account and deposited them into the BFLP account in February 2006. He then withdrew the tobacco proceeds from the BFLP account in increments of $9,900 so as not to trigger federal reporting requirements. (There were at least five of those withdrawals in the four-day period between February 3 and 7, 2006.) The tobacco proceeds and other BFLP funds were used for Burwell's personal affairs. Burwell candidly testified at the § 341 meeting that he was using the partnership accounts to manage his personal affairs so that the judgment creditor couldn't get the money. The judgment creditor had garnished his personal accounts twice before, and he "didn't want that to happen again." He was also depositing his social security checks into the BFLP account.

As to the RHFP account, Burwell was not a signatory. Kelly was. However, Burwell had a rubber stamp of Kelly's signature. Burwell wrote all the checks on that account and stamped Kelly's name.

On the day the petition was filed, the RHFP account had a balance of $2,300, and a check for $9,000 was deposited into it the day after the petition was filed. The Complaint asserted that, based on the records, it appeared that more than $225,000 was deposited into and taken out of the RHFP account in the year prior to the bankruptcy.

## THE JUDGMENT

The Order for Judgment states that Burwell "controlled each RHFP and BFLP and he is the beneficial owner of assets held in their names and they are his alter egos. The assets of each are therefore, and should be considered to be assets of this bankruptcy estate."

4

In addition to the alter ego claims for relief, the Complaint asserted that the Debtor had listed a $25,000 diamond ring and a $4,000 BMW on his schedules and that he purportedly granted a security interest in the ring and car to BFLP but neither lien was perfected. These liens were the subject of Counts VI through IX. The judgment avoided them.

## APPELLANTS' POSITION

The appellants are not arguing improper service or any other procedural defects. Rather, appellants argue that the court erred in holding that the partnerships were the alter ego of Burwell and all of the assets of the partnerships were included in Burwell's bankruptcy estate. The appellants' brief contains assertions of fact to support their position. However, none of the "facts" now being presented are part of the record in the trial court. Accordingly, the trial court did not have an opportunity to consider them.

## STANDARD OF REVIEW

We review the entry of a default judgment for an abuse of discretion. Jones Truck Lines, Inc. v. Foster's Truck & Equip. Sales, Inc. (In re Jones Truck Lines, Inc.), 63 F.3d 685, 686-87 (8th Cir. 1995); Am. Gen. Fin. v. Washington (In re Washington), 248 B.R. 565, 566 (B.A.P. 8th Cir. 2000).

## DISCUSSION

Default judgments under Federal Rule of Bankruptcy Procedure 7055 and Federal Rule of Civil Procedure 55 are disfavored. United States *ex rel.* Time Equip. Rental & Sales, Inc. v. Harre, 983 F.2d 128, 130 (8th Cir. 1993). Because of that, courts have an independent duty to determine the sufficiency of the complaint. Fed. R. Civ. P. 55(b)(2); Miller v. Kasden (In re Kasden), 209 B.R. 236, 239 (B.A.P. 8th

Cir. 1997). A default judgment must be entered upon facts clearly pleaded or otherwise established tending to prove the trustee is entitled to the relief granted. Id.

A party is not entitled to a default judgment as of right; rather, the decision calls for the court's exercise of sound judicial discretion. Lovell v. McArthur (In re McArthur), 258 B.R. 741, 746 (Bankr. W.D. Ark. 2001) (citing Jones Truck Lines, Inc., 63 F.3d at 686 and Howell Enter. Inc. v. First Nat'l Bank (In re Howell Enter., Inc.), 99 B.R. 413, 415 (Bankr. E.D. Ark. 1989)). A hearing on the merits is favored by the policies underlying the Federal Rules of Civil Procedure. McArthur, 258 B.R. at 746. When the grant of a default judgment precludes consideration of the merits of a case, even a slight abuse of discretion may justify reversal. Johnson v. Dayton Elec. Mfg. Co., 140 F.3d 781, 785 (8th Cir. 1998) (decided in the context of a Rule 55(c) motion to set aside a default judgment).

This court addressed in great detail the necessary underpinnings of a default judgment in the Kasden case, in which the bankruptcy trustee attempted to get the debtor to remove his personal property from real estate the trustee wanted to sell. The debtor did not oblige, so the trustee removed it and put it into storage. He notified the debtor that if the debtor did not identify and claim whatever personal property he wanted, the trustee would sell it. The debtor evidently objected to the threat to sell the items, but did not identify or claim them to the trustee's satisfaction. The trustee then filed an adversary complaint requesting a court ruling that the items did in fact belong to the debtor and the debtor should pay the costs of their removal and storage. The debtor was properly served, but failed to answer or appear. On the trustee's motion, the court entered a default judgment in favor of the trustee, essentially repeating in the judgment's factual findings the allegations of the complaint. The debtor appealed.

The B.A.P. laid out the requirements for the sufficiency of a default judgment:

> The granting of a default judgment for failure to defend, as is the situation now before the court, is appropriate where the failure to comply with the time requirements is more than a marginal failure and where the nonresponding party's conduct includes "willful violations of court rules, contumacious conduct, or intentional delay." Harre, 983 F.2d at 130. See also Ackra Direct Marketing Corp. v. Fingerhut Corp., 86 F.3d 852, 855 (8th Cir. 1996). However, a default judgment may not be entered on a complaint that fails to support the claim for relief and on appeal, a defaulted defendant may always challenge the legal sufficiency of the complaint allegations. Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388, 1392 (9th Cir. 1988).
>
>> Upon entry of a default judgment, facts alleged to establish liability are binding upon the defaulting party, and those matters may not be re-litigated on appeal. However, it follows from this that facts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the judgment. On appeal the defendant, although he may not challenge the sufficiency of the evidence, is entitled to contest the sufficiency of the complaint and its allegations to support the judgment.
>
> Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978).

Kasden, 209 B.R. at 238-39. The court then found that the complaint failed to state facts to support a judgment in favor of the trustee. The court remanded the case to the bankruptcy court for further findings.

The Eighth Circuit Court of Appeals dismissed the trustee's appeal of the remand order, holding that it was not a final, appealable order. However, the Eighth Circuit court noted that the debtor's statements in the pleadings, particularly his letter objecting to the trustee's decision to sell the personal property, may have been sufficient to support the bankruptcy court's entry of the default judgment.

7

Nevertheless, the bankruptcy court did not cite the letter in its judgment, and the court of appeals said "the bankruptcy court's findings echoed [the trustee's] complaint, and the B.A.P. concluded the complaint was legally insufficient to support the default judgment." Miller v. Kasden (In re Kasden), 141 F.3d 1288, 1290 (8th Cir. 1998).

Therefore, in light of the requirements of Rule 55 and Eighth Circuit caselaw, a bankruptcy court must review the underlying complaint to determine whether the necessary facts to support a claim for relief have been pleaded before granting default judgment . Price v. America's Serv'g Co. (In re Price), 377 B.R. 224, 225 n.1 (Bankr. E.D. Ark. 2007) (citing Kasden).

The Complaint alleged the following causes of action: declaratory judgment, injunctive relief, turnover, and fraudulent and avoidable transfers. The elements of each of those causes of action are set forth below:

1. Count I declaratory judgment that debtor ignored corporate formalities and used RHFP and BFLP to defraud creditors.
   a. The court can pierce the corporate veil and disregard the corporate facade when the corporate entity is the alter ego of the debtor and the debtors use corporate assets as their own, with no regard for corporate structure. St. Francis County Farmers Ass'n v. Wright (In re Wright), 353 B.R. 627, 648 (Bankr. E.D. Ark. 2006).

   b. Minnesota courts use a two-step analysis in determining whether an entity is the alter ego of an individual. United States v. Scherping, 187 F.3d 796, 802 (8th Cir. 1999), cert. denied, 528 U.S. 1162 (2000). First, the court considers the relationship between the corporation and the individual, focusing on factors such as the failure to observe corporate formalities, siphoning of funds by the individual, absence of corporate records, and the

8

existence of the corporation as merely a facade for the individual. Id. Next, the court considers the nature of the relationship between the corporation and the party seeking to disregard it; the entity will be disregarded only if it has operated in a fraudulent or unjust manner toward that party. Id. "[W]here the formalities of corporate existence are disregarded by one seeking to use it, . . . [the] existence [of the corporation] cannot be allowed to shield the individual from liability for damages incurred by those dealing with the corporation." Id. (quoting Victoria Elevator Co. v. Meriden Grain Co., 283 N.W.2d 509, 512 (Minn. 1979)).

2.      Count II injunctive relief pursuant to 11 U.S.C. § 105.

The bankruptcy court can apply its equitable powers under § 105(a) to enjoin the defendants' interference with the estate and its assets if the Dataphase factors support such a decision. The court should consider (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on the other parties; (3) the probability that the movant will succeed on the merits; and (4) public interest. Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981).

3.      Count III turnover.
        a.      The Code requires any entity in possession, custody, or control of estate property to deliver such property to the trustee or account for its value. § 542(a).
        b.      The debtor acknowledged at the § 341 meeting that he deposited personal funds into the corporate accounts to protect the funds from creditors.

4.      Counts VI and VII avoidance of diamond ring and BMW security interests under § 544.

9

11 U.S.C. § 544(b) authorizes the trustee to exercise an existing unsecured creditor's right to avoid a transfer if the creditor holds such a right under non-bankruptcy law. If the trustee identifies such a creditor with an allowable claim and a valid right to avoid the transfer, the trustee may avoid the claim and recover the entirety of the property or value of the property "for the benefit of the estate." 11 U.S.C. § 550(a); Stalnaker v. DLC, Ltd., 376 F.3d 819, 823 (8th Cir. 2004).

5.  Counts VII and IX avoidance of diamond ring and BMW security interests under § 547.

Section 547(e)(2) establishes the time at which a transfer is considered to have been made, and if the transfer has not been perfected within an allowed time, the transfer is deemed to have occurred prepetition.

Although the Complaint did not use the phrase "pierce the corporate veil," it did clearly lay out the factual allegations necessary to support a claim for relief based upon the "alter ego" theory under Minnesota law as referred to above.. The Complaint describes in detail how Burwell controlled the bank accounts of the two entities, even though he claimed to have no ownership or other interest in them. A summary of such allegations is contained in the "Complaint" section above and, to avoid unduly lengthening this opinion, those factual allegations will not be repeated here.

After detailing Burwell's actions concerning the partnership accounts, the Complaint specifically asserts, at paragraph 27, that the "Debtor controlled each RHFP and BFLP and he is the beneficial owner of assets held in their names and they are his alter ego. The assets of each are therefore, and should be considered to be assets of this bankruptcy estate." Then, in Count I, at paragraphs 38 and 39, the Complaint alleges that, with respect to each entity, the Debtor utilized them as instruments to defraud his creditors, corporate formalities were ignored, their sole purpose was to protect assets of the Debtor and each was simply a facade for the Debtor. Suffice it to say that the allegations fully supported each claim for relief.

10

CONCLUSION

The Trustee's Complaint supplied detailed factual allegations, as described above, sufficient to support each claim for relief. Upon the failure of the appellants to respond to the Complaint, it was not an abuse of discretion for the trial court to enter the default judgment, and the judgment is affirmed.

FEDERMAN, Bankruptcy Judge, dissenting

At the outset, it is not entirely clear under what theory the Trustee argued, and the bankruptcy court determined, that BFLP and RHFP were Burwell's alter egos. Although the Complaint summarily mentioned some of the elements of a finding of alter ego under Minnesota law (discussed below), the only authorities cited by the Trustee in the Complaint relate to the bankruptcy court's equitable powers.[2] On appeal, the Trustee states that the case was not grounded on a reverse veil piercing theory, but he does not specify on what legal theory it was grounded. If it was based solely on the bankruptcy court's equitable powers, then the validity of the judgment is particularly dubious because the Eighth Circuit has expressly said that the question of whether to pierce a corporate veil is governed by state law,[3] and that a bankruptcy court may not exercise its equitable powers to create substantive rights which do not exist under state law.[4] Consequently, the majority reasonably presumes, as do I, that the finding of alter ego must have been based on Minnesota law.

---

[2] 11 U.S.C. § 105 and *Pepper v. Litton*, 308 U.S. 295, 304-05 (1939).

[3] *Stoebner v. Lingenfelter*, 115 F.3d 576, 579 (8th Cir. 1997) ("Whether to pierce the corporate veil is a legal determination that, in our circuit, is governed by state law.").

[4] *Johnson v. First Nat'l Bank of Montevideo*, 719 F.2d 270, 274 (8th Cir. 1983).

That being said, as the majority states, while BFLP and RHFP may not challenge the sufficiency of the evidence that the bankruptcy court used in entering default judgment against them, they are permitted to contest the sufficiency of the Trustee's Complaint and its allegations to support the judgment.[5] "[F]acts which are not established by the pleadings of the prevailing party, or claims that are not well-pleaded, are not binding and cannot support the judgment."[6] In my view, the Trustee's Complaint did not sufficiently support the bankruptcy court's conclusions that BFLP and RHFP are Burwell's alter egos under Minnesota law.

The majority correctly outlines the analysis used by Minnesota courts in determining whether an entity is the alter ego of an individual, which "focus[es] on factors such as the failure to observe corporate formalities, siphoning of funds by the individual, absence of corporate records, and the existence of the corporation as merely a facade for the individual."[7] Other factors include insufficient capitalization for purposes of corporate undertaking, nonpayment of dividends, and nonfunctioning of other officers and directors.[8] The Trustee's Complaint alleges almost nothing about whether BFLP and RHLP observed corporate (partnership) formalities, other than to state generally that Burwell "controlled" them. There are no specific allegations as

---

[5] *Miller v. Kasden*, 209 B.R. 236, 238-39 (B.A.P. 8th Cir. 1997) (also stating that "a defaulted defendant may always challenge the legal sufficiency of the complaint allegations").

[6] *Id.* at 238.

[7] *United States v. Scherping*, 187 F.3d 796, 802 (8th Cir. 1999). *See also Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509, 512-13 (Minn. 1979) (setting out factors considered to be significant). "Alter ego" is often used synonymously with the term "reverse veil piercing." *See e.g., Miller & Schroeder, Inc. v. A.T. Gearman*, 413 N.W.2d 194 (Minn. Ct. App. 1987) (treating the two terms synonymously and applying a similar standard as that used in *Scherping*).

[8] *Victoria Elevator*, 283 N.W.2d at 512.

to Kelly's or anyone else's role in any of the partnerships' decision-making processes. Nor does the Complaint mention capitalization or say anything about whether the partnerships had their own records. In addition, the Complaint does not spell out what assets each of the partnerships had or specifically state how the partnership assets were managed. As one example, the Complaint alleged that BFLP owned three parcels of real estate, but contained no allegations as to when or how those properties were acquired or how they were treated by the parties, such as whether Burwell or his ex-wife paid BFLP rent for the houses they lived in or how income and expenses relating to the investment property were handled. In fact, the Complaint alleged that "BFLP funds, directed by [Burwell], were used to maintain and enhance all three properties." If BFLP was using its own funds to manage its own assets as alleged, even if Burwell directed such use, that would weigh against a finding that it was Burwell's alter ego. And, although the Complaint alleged that Burwell ran his personal funds through the partnership accounts to protect those funds from creditors and vaguely alleged that he used some other unspecified BFLP funds for his personal affairs, the Complaint does not expressly allege that Burwell siphoned partnership funds or assets out of the partnerships.[9] In sum, both the Complaint and the findings tracking that Complaint ignore many of the factors to be considered by Minnesota courts in determining whether any entity is the alter ego of an individual.

---

[9] I disagree with the majority's conclusion that the Complaint describes in detail how Burwell controlled the bank accounts of the two entities. For example, the Complaint alleges that, in the year prior to the filing of the bankruptcy petition, "it appears that more than $225,000 was deposited into and out of the RHFP Account" (Amended Complaint ¶ 23), but it says nothing about where that money came from or where it went, other than the $64,600 from the tobacco rights, and the five cash withdrawals. In any event, if Burwell transferred his own assets to either partnership, those transfers may be recoverable by the Trustee from those partnerships under specific provisions of the Bankruptcy Code (§§ 547 or 548) or state fraudulent conveyance statutes (as made applicable by § 544).

13

The Complaint also alleged that the purpose of either BFLP or RHLP, "other than to protect Burwell's personal assets, *is unclear*."[10] Given the fact that veil piercing should be effected "only under limited circumstances,"[11] an allegation that the partnerships have an "unclear" purpose does not support a finding that they were merely Burwell's facade.

In addition, "[d]isregard of the corporate entity requires not only that a number of these factors be present, but also that there be an element of injustice or fundamental unfairness."[12] Other than pointing out Burwell's misdeeds in funneling personal funds through the partnership accounts and alleged misstatements on his schedules, the Complaint states no facts to support a finding of injustice or fundamental unfairness to other parties, particularly as to whether any other owner or creditor of either of the two partnerships would be adversely affected by the finding of alter ego.[13]

Finally, as mentioned above, the Trustee states in his appeal brief that this is not a reverse veil piercing case, and his Complaint cited only the bankruptcy court's equitable powers – and not veil piercing – as the basis for the determination that the partnership's assets were Burwell's assets. That may be because, although no one has

---

[10] Amended Complaint ¶ 10 (emphasis added).

[11] *Groves v. Dakota Printing Servs., Inc.*, 371 N.W.2d 59, 62 (Minn. App. 1985); *Halverson v. Schuster*, 132 B.R. 604, 608 (Bankr. D. Minn. 1991).

[12] *United States v. Scherping*, 187 F.3d at 802 (quoting *Victoria Elevator*, 283 N.W.2d at 512).

[13] *See Stoebner v. Lingenfelter*, 115 F.3d 576, 579 n.4 (8th Cir. 1997) (holding that a court can disregard the corporate entity when the shareholder "owned all, or substantially all, of the stock, treated the property as his own, *and, most importantly, [when] no shareholder or creditor would be adversely affected*.") (emphasis added).

14

yet raised the issue, the Trustee's standing to bring an action to pierce the veil may be questionable since the Complaint does not allege that the debtor (Burwell) had any ownership interest in either of the two partnerships.[14] In any event, the fact that the Complaint never mentions these theories bolsters the conclusion that the elements are not adequately set forth (*i.e.* they are not well-pleaded)[15] in the Complaint.

I recognize that, as a general rule, failing to respond to a pleading precludes a party from raising issues on appeal. The BAP recently reiterated that general principle in *Walton v. Sosne*.[16] However, as that case pointed out, there are exceptions to that general rule, such as "where the obvious result of following the rule would be a plain miscarriage of justice or would be inconsistent with substantial justice."[17] In my view, a default judgment for equitable relief such as that sought by the Trustee here, based on a factually insufficient pleading, would be such an injustice. Hence, while courts should not be hesitant to enter default judgments, a defaulting party should not be prohibited from arguing on appeal that the complaint on which the judgment was based was factually insufficient. This comports with the rule enunciated in *Kasden*. In addition, I would also mention that this is not a case in which the defendants totally ignored the response deadline, since Burwell and Kelly both responded to the Complaint, albeit in their personal capacities. Since Burwell, acting *pro se*, filed an appeal of the judgment rather than a Rule 59 or 60 motion, the bankruptcy court never had the opportunity to consider his contentions as to why the partnerships initially failed to respond.

---

[14] *See Halverson v. Schuster*, 132 B.R. 604 (Bankr. D. Minn. 1991).

[15] *Kasden*, 209 B.R. at 238-39 ("facts which are not established by the pleadings of the prevailing party, or claims that are not well-pleaded, are not binding and cannot support the judgment").

[16] *Walton v. Sosne*, No. 08-6012 (B.A.P. 8th Cir. Aug. 4, 2008).

[17] *Seniority Research Group v. Chrysler Motor Corp.*, 976 F.2d 1185, 1187 (8th Cir. 1992).

In sum, the allegations that Burwell funneled his personal funds through partnership accounts to protect those funds from his creditors and used a signature stamp to do so, without more, do not support a finding that the partnerships – in which he is not alleged to own any interest – are his alter ego. That is not to say that the Trustee would be unable to allege and prove that they are. Rather, as in *Kasden*, it is my view that the Complaint simply lacks sufficient factual allegations to support such a finding. Under the circumstances, and given the drastic relief ordered in declaring the partnerships to be Burwell's alter ego, I conclude that not requiring the Trustee to allege and prove the elements required by Minnesota law would be inconsistent with substantial justice. Consequently, I would remand the case to the bankruptcy court for such further proceedings as are appropriate.

———————————